**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ELIZABETH VAN DUYNE, and THE STATE OF TEXAS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| CENTERS FOR DISEASE CONTROL | § | |
| AND PREVENTION, ROCHELLE P. | § | |
| WALENSKY, in her official capacity as | § | |
| Director of the CDC, SHERRI A. BERGER, | § | |
| in her official capacity as Chief of Staff of the | § | |
| CDC, UNITED STATES DEPARTMENT | § | |
| OF HEALTH AND HUMAN SERVICES, | § | |
| XAVIER BECERRA, in his official | § | |
| capacity as Secretary of HHS, and | § | |
| UNITED STATES OF AMERICA. | § | |
| *Defendants.* | § | |

**PLAINTIFF ELIZABETH VAN DUYNE'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Elizabeth "Beth" Van Duyne seeks preliminary injunctive relief from this Court

against the Centers for Disease Control and Prevention (the "CDC"), Rochelle P. Walensky (in

her official capacity as Director of the CDC), Sherri A. Berger (in her official capacity as Chief of

Staff of the CDC), United States Department of Health and Human Services ("HHS"), Xavier

Becerra (in his official capacity as Secretary of HHS), and the United States of America

(collectively, the "Defendants"). Plaintiff challenges the constitutionality and statutory authority

of Defendants' agency order imposing a requirement for people to wear masks while on

conveyances, such as airplanes, and at transportation hubs (the "Mask Mandate" or the "Order"),[1] and in support would show the Court as follows:

As set forth in the accompanying Memorandum in Support, Plaintiff has met her burden of showing that a preliminary injunction should issue:

*First*, she has established a likelihood of success on the merits that the Mask Mandate Order exceeds the statutory authority delegated to the CDC and violates the Administrative Procedure Act, or, if it is not in excess of statutory authority, it violates the nondelegation doctrine.

*Second*, Plaintiff will suffer irreparable harm. Every time she travels, she is subject to an unlawful regulation that burdens her liberty interest by taking away her choice to not wear a mask over her face, and there is no avenue for later recovery due to sovereign immunity.

*Third*, the continued injury to Plaintiff outweighs whatever damage the proposed injunction may cause Defendants; the balance of the equities and the public interest favor an injunction. Defendants lack a legitimate interest in enforcing an unlawful and unconstitutional agency action.

For these reasons and those set forth in detail in the accompanying Memorandum in support, the Court should issue a preliminary injunction enjoining Defendants from enforcing the Mask Mandate.

Respectfully submitted,

*/s/Matthew Miller*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
MATTHEW MILLER
Texas Bar No. 24046444
mmiller@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue

---

[1]     *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021).

Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:     (512) 472-2728

*Attorneys for Plaintiff*

## CERTIFCATE OF CONFERENCE

Because Defendants' counsel has yet to make an appearance, I have not been able to confer specifically on this Motion for Preliminary Injunction. I certify that on February 16, 2022, I attempted to confer via email with counsel for Defendants CDC Deputy Associate General Counsel Deborah Tress at dtress@cdc.gov and HHS Acting General Counsel Daniel J. Barry at daniel.barry@hhs.gov about the relief sought in the attached Motion for Preliminary Injunction. Defendants did not take a position in agreement or opposition.

*/s/Matthew Miller*
MATTHEW MILLER

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on February 16, 2022,

and sent via certified mail, return receipt requested to the following:

Centers for Disease Control and Prevention
1600 Clifton Road
Atlanta, GA 30329

Rochelle P. Walensky,
in her official capacity as
Director of the Centers for Disease Control and Prevention
1600 Clifton Road
Atlanta, GA 30329

Sherri Berger,
in her official capacity as
Chief of Staff for the U.S. Dept. of Health and Human Services
1600 Clifton Road
Atlanta, GA 30329

United States of America
Chad Meachum
U.S. Attorney's Office
Northern District of Texas
1100 Commerce Street, 3rd Floor
Dallas, TX 75242

Xavier Becerra,
in his official capacity as
Secretary for the U.S. Dept. of Health and Human Services
200 Independence Avenue SW
Washington, DC 20201

*/s/Matthew Miller*
MATTHEW MILLER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| ELIZABETH VAN DUYNE, and THE | § | |
| STATE OF TEXAS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| CENTERS FOR DISEASE CONTROL | § | |
| AND PREVENTION, ROCHELLE P. | § | |
| WALENSKY, in her official capacity as | § | |
| Director of the CDC, SHERRI A. BERGER, | § | |
| in her official capacity as Chief of Staff of the | § | |
| CDC, UNITED STATES DEPARTMENT | § | |
| OF HEALTH AND HUMAN SERVICES, | § | |
| XAVIER BECERRA, in his official | § | |
| capacity as Secretary of HHS, and | § | |
| UNITED STATES OF AMERICA. | § | |
| *Defendants.* | § | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

STANDARD FOR GRANTING THE MOTION .................................................................. 4

I.      Plaintiff is likely to succeed on the merits ................................................................ 4

        A.      The Mask Mandate is unlawful because Section 264 does not authorize it ............ 5

                1.      Traditional methods of statutory construction can only lead to the
                        conclusion that § 264(a) does not authorize the Mask Mandate ................. 7

                2.      The context and structure of § 264 as a whole also shows that the
                        Mask Mandate is beyond the CDC's statutory authority ............................ 9

        B.      If Section 264 authorizes the Mask Mandate, it violates the nondelegation
                doctrine ................................................................................................................ 11

II.     Plaintiff will suffer irreparable harm in the absence of preliminary relief ...................... 12

III.    The threatened injury to Plaintiff outweighs whatever damage a preliminary
        injunction may cause defendants .......................................................................... 14

IV.     An injunction against an unauthorized or unconstitutional action will serve the
        public interest ..................................................................................................... 14

CONCLUSION .................................................................................................................. 15

CERTIFICATE OF SERVICE ........................................................................................... 16

## TABLE OF AUTHORITIES

**Cases:**                                                                                                  **Page(s):**

*Ala. Ass'n of Realtors v. HHS*,
   141 S. Ct. 2485 (2021)..........................................................................................5, 7, 8

*American Power & Light v. Securities & Exchange Comm'n*,
   329 U.S. 90 (1946)............................................................................................12

*Ariz. Dream Act Coalition v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ..........................................................................13

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988)..........................................................................................13

*BST Holdings, L.L.C. v. OSHA*,
   ___, F.4th ___, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12, 2021) ...................13, 14

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
   511 F.3d 545 (6th Cir. 2007) .............................................................................5

*Corley v. United States*,
   556 U.S. 303 (5th Cir. 2009) ..............................................................................8

*Deerfield Med. Ctr. v. Deerfield Beach*,
   661 F.2d 328 (5th Cir. 1981) ............................................................................13

*Defense Distributed v. U.S. Dept. of State*,
   865 F.3d 211 (5th Cir. 2017) ..............................................................................4

*de Jesus Ortega Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ............................................................................14

*Dolan v. U.S. Postal Serv.*,
   546 U.S. 481 (2006)...........................................................................................9

*Elrod v. Burns*,
   427 U.S. 347 (1976)..........................................................................................13

*Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
   762 F.2d 464 (5th Cir. 1985) .......................................................................12, 13

*Fla. Dept. of Rev. v. Piccadilly Cafeterias, Inc.*,
    554 U.S. 33 (2008)...................................................................................................10

*Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*,
    601 F.2d 199 (5th Cir. 1979) ...................................................................................4

*Florida v. Becerra*,
    2021 WL 2514138, U.S. Dist. LEXIS 114297 (M.D. Fla. June 18, 2021)...................7

*Gomez v. United States,*
    490 U.S. 858 (1989)...................................................................................................9

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*,
    968 F.3d 454 (2020)...................................................................................................6

*Gundy v. United States,*
    139 S. Ct. 2116 (2019)........................................................................................11, 12

*In re Application of the United States for Historical Cell Site Data*,
    724 F.3d 600 (5th Cir. 2013) ...................................................................................9

*J.W. Hampton & Co. v. United States*,
    276 U.S. .......................................................................................................................11

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013) ...................................................................................4

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) .................................................................................4

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) .....................................................................................14

*Mistretta v. United States*,
    488 U.S. 361 (1989)..........................................................................................11, 12

*Modoc Lassen Indian Hous. Auth. v. United States HUD*,
    881 F.3d 1181 (10th Cir. 2017) ...............................................................................13

*NLRB v. Canning*,
    573 U.S. 513 (2014)..................................................................................................13

*Porter v. Nussle*,
    534 U.S. 516 (2002).............................................................................10

*Reed v. Taylor*,
    923 F.3d 411 (5th Cir. 2019) ..............................................................8

*State v. Biden*,
    10 F.4th 538 (5th Cir. 2021) ..........................................................4, 14

*State v. United States*,
    336 F.Supp.3d 664 (N.D. Tex. 2018) .................................................13

*Tesfamichael v. Gonzales*,
    411 F.3d 169 (5th Cir. 1985) ................................................................4

*Tiger Lily LLC v. United States HUD*,
    5 F.4th 666 (6th Cir. 2021) .............................................................7, 10

*Touby v. United States*,
    500 U.S. 160 (1991).....................................................................5, 9, 12

*Trans World Airlines v. Mattox*,
    897 F.2d 773 (5th Cir. 1990) .............................................................. 14

*United States v. Koutsostamatis*,
    956 F.3d 301 (5th Cir. 2020) ...............................................................8

*Usn Seals 1-26 v. Biden*,
    ___ F. Supp. 3d ___, 2022, U.S. Dist. LEXIS 2268
    (N.D. Tex. Jan. 3, 2022)........................................................................4

*Washington v. Reno*,
    35 F.3d 1093 (6th Cir. 1994) .............................................................14

*Wayman v. Southard*,
    23 U.S. 1 (1825)..................................................................................11

**Constitutional Provisions:**

U.S. Const. Art. I § 1 ...................................................................................11

**Statutes and Regulations:**

5 U.S.C.
    § 702.................................................................................................................13
    § 706(2)(b)........................................................................................................11
    § 706(2)(c)..........................................................................................................5

20 U.S.C.
    § 3508................................................................................................................6

42 U.S.C.
    § 264..................................................................................................................1
    § 264(a)......................................................................................................5, 6, 7

42 C.F.R.
    § 70.2.................................................................................................................1
    § 71.1..........................................................................................................1, 2, 3
    § 71.31(b)...........................................................................................................1
    § 71.32(b)...........................................................................................................1

31 Fed. Reg. 8855 (June 25, 1966) ............................................................................6

86 Fed. Reg. 8025 (Feb. 3, 2021) ..........................................................................1, 2

Public Health Service Act,
    78 P.L. 410, 58 Stat. 682 (Enacted July 1, 1944) .............................................9

## INTRODUCTION

This case involves a statutory and constitutional challenge to the CDC's Mask Mandate[2] on commercial airlines, conveyances, and at transportation hubs. On February 3, 2021, the Center for Disease Control and Prevention (the "CDC") published *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs* (the "Mask Mandate Order") in the Federal Register. 86 Fed. Reg. 8025 (Feb. 3, 2021). The CDC issued the Mask Mandate without any notice, public comment, or review. *Id.* at 8030. Violating the Mask Mandate carries the possibility of criminal penalties. *Id.* at 8030 n.33. It requires people to wear masks over their nose and mouth when at airports[3] and on commercial airplanes.[4] *Id.* at 8026.

Defendants claim that its power to require masks over every commercial airplane passenger derives from Section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 C.F.R §§ 70.2, 71.31(b), and 71.32(b).[5] But none of these authorities give the CDC the power to issue a blanket mask mandate for all travelers without regard to whether they are suspected of carrying communicable diseases. Such a broad reading of 42 U.S.C. § 264 and 42 C.F.R. § 70.2 (its implementing regulation) is inconsistent with traditional tools of statutory interpretation, and, if read to include the power to issue the Mask Mandate Order, would violate separation of powers by delegating authority without an intelligible principle to restrain the CDC's discretion.

---

[2]     *Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021), *available at* https://www.govinfo.gov/content/pkg/FR-2021-02-03/pdf/2021-02340.pdf.

[3]     The Mask Mandate Order's definition of "transportation hub" includes "any airport." 86 Fed. Reg. at 8027.

[4]     The Mask Mandate Order's definition of "conveyance" is the same definition used in 42 C.F.R. § 70.1 and includes "an aircraft." 86 Fed. Reg. at 8027.

[5]     Sections 71.31 and 71.32 govern entry into the United States from "foreign countries" and are not relevant to this challenge. *See* 42 C.F.R. § 71.1.

1

If not enjoined, the Mask Mandate Order will cause irreparable harm to Plaintiff. Plaintiff primarily flies from the Dallas Fort Worth International Airport ("DFW"), for both business and personal travel, on at least 40 round trip flights per year. Declaration of Elizabeth Van Duyne, ¶ 3. She currently has multiple round-trip flights booked in the upcoming weeks and would not wear a mask at the airport or on the plane if it was not required. Declaration of Elizabeth Van Duyne, ¶¶ 4, 6. Plaintiff is barred by sovereign immunity from collecting money damages from the CDC's unlawful Mask Mandate Order. Accordingly, a preliminary injunction is necessary to prevent further irreparable injury while the merits of Plaintiff's claims are adjudicated.

## FACTUAL BACKGROUND

### *Background*

COVID-19 is a respiratory disease caused by a novel coronavirus, SARS–COV–2. 86 Fed. Reg. at 8028. The CDC published the Mask Mandate in the Federal Register on February 3, 2021. *Id.* at 8025. It became effective without notice or comment or delay. *Id.* at 8030. It is the first order of its kind.

While the Mask Mandate is allegedly intended to prevent the interstate spread of COVID-19, it does nothing to directly target people or property that are reasonably believed to be infected. Instead, it is a blanket preventative measure that removes travelers' choice of whether to wear a mask without regard to if they are capable of spreading a disease.

Under the Mask Mandate, travelers "must wear a mask while boarding, disembarking, and traveling on any conveyance into or within the United States" and "must also wear a mask at any transportation hub that provides transportation within the United States." *Id.* at 8029. It defines masks as "a material covering the nose and mouth of the wearer, excluding face shields." *Id.* at 8027. The Mask Mandate uses the definition of "conveyance" found in 42 C.F.R. § 70.1:

"Conveyance means an aircraft, train, road vehicle, vessel (as defined in this section) or other means of transport, including military." *Id.* It defines a "transportation hub" as "any airport, bus terminal, marina, seaport or other port, subway station, terminal (including any fixed facility at which passengers are picked-up or discharged), train station, U.S. port of entry, or any other location that provides transportation subject to the jurisdiction of the United States." *Id.*

The Mask Mandate has very few exemptions. *Id.* (listing children under two years, people with disabilities who cannot safely wear a mask, and people who for wearing a mask would create a workplace hazard as exempt). It also has very few exceptions, such as while eating or while unconscious. *Id.* In June 2021, the CDC stated that it will not enforce the Mask Mandate when travelers are in outdoor areas. Centers for Disease Control and Prevention, *Requirement for Face Masks on Public Transportation Conveyances and at Transportation Hubs*, https://www.cdc.gov/coronavirus/2019-ncov/travelers/face-masks-public-transportation.html (last accessed Feb. 14, 2022). The order directs other Federal agencies to "implement additional measures enforcing the provisions of this Order." 86 Fed. Reg. at 8028, 8030. The Mask Mandate is enforceable through financial penalties, and the CDC reserves the right to enforce the Mask Mandate through criminal penalties. *Id.* at 8030.

### Plaintiff's Injury

Plaintiff regularly flies into and out of DFW. Declaration of Elizabeth Van Duyne, ¶ 3. She has multiple flights booked in the upcoming weeks, including flights on February 26, February 28, March 3, March 7, March 10, March 15, March 18, March 23, and March 28. Declaration of Elizabeth Van Duyne, ¶ 4. She estimates she flies approximately 80 times per year. Declaration of Elizabeth Van Duyne, ¶ 3. She does not fall into any of the categories of people exempt from the

Mask Mandate. Declaration of Elizabeth Van Duyne, ¶ 5. She would choose not to wear a mask while at an airport or on a flight if it was not required. Declaration of Elizabeth Van Duyne, ¶ 6.

## STANDARD FOR GRANTING THE MOTION

A plaintiff seeking a preliminary injunction must make four showings: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) granting the injunction is not adverse to the public interest. *Usn Seals 1-26 v. Biden*, __ F. Supp. 3d __, 2022 U.S. Dist. LEXIS 2268, at \*7-8 (N.D. Tex. Jan. 3, 2022); *see also State v. Biden*, 10 F.4th 538, 545 (5th Cir. 2021) (upholding a preliminary injunction against federal government). The Court may employ a "sliding scale" approach, issuing the injunction upon a lesser showing of harm when the likelihood of success on the merits is especially high. *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Ed. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979); *see also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).

## I.      Plaintiff is likely to succeed on the merits.

A likelihood of success on the merits is "arguably the most important" factor for injunctive relief. *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 1985) (discussing temporary stays of removal); *accord Defense Distributed v. U.S. Dept. of State*, 865 F.3d 211, 212 (5th Cir. 2017) (Elrod, J., dissenting from denial of petition for rehearing en banc). This factor "does not require the movant prove his case," *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991), but it is "ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair ground for litigation and thus for more

deliberate investigation, *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 545, 543 (6th Cir. 2007). As shown below, that standard is met here.

First, Congress never authorized the CDC to issue an order like the Mask Mandate. Section 264, on which the CDC relies, does not authorize it to issue general, preventative public health measures. Instead, as the Supreme Court recently held, the CDC is limited to making and enforcing regulations that are like "the kinds of measures" listed in the statute: inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of contaminated animals and articles. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021).

That is, the CDC can institute measures that "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself." *Id.* Accordingly, at a minimum, a CDC order issued under § 264(a) needs to be targeted at the disease. A blanket Mask Mandate applied to all passengers whose infection status is unknown does not target the disease; it targets people, healthy and unhealthy, contagious and not contagious alike. Second, if § 264 can be read so capaciously as to include the power to issue a Mask Mandate for the millions of people who travel by air every day, it violates the nondelegation doctrine because the statute contains no meaningful boundaries to constrain the CDC's discretion. *See Touby v. United States*, 500 U.S. 160, 166 (1991)

### A.    The Mask Mandate is unlawful because Section 264 does not authorize it.

A reviewing court must hold unlawful and set aside agency action that is in excess of statutory authority. 5 U.S.C. § 706(2)(c). This Court should do just that. The CDC relies on 42 U.S.C. § 264(a) for authority to make and enforce the Mask Mandate. 86 Fed. Reg. at 8029. That subsection reads in full:

(a) **Promulgation and enforcement by Surgeon General.**[6] The Surgeon General, with the approval of the Administrator [Secretary], is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the Surgeon General may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

42 U.S.C. § 264(a).

The Fifth Circuit reviews an agency's interpretation of a statute using the two-step *Chevron* framework. *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 460 (2020). Step one asks, "whether Congress has directly spoken to the precise question at issue." *Id.* During this step, the court will use all the "traditional tools of construction, including text, structure, history, and purpose." *Id.* (internal quotation marks omitted). The interpretation "must account for both the specific context in which language is used and the broader context of the statute." *Id.* Only if the statute is "truly ambiguous" will the court proceed to step two, "asking whether the agency's construction is permissible." *Id.* (internal quotation marks omitted). Here, once the Court uses all the traditional interpretive methods, there is no ambiguity as to whether the statute authorizes the CDC to issue the Mask Mandate Order. It does not.

---

[6]     The Statute refers to the Surgeon General, but statutory powers granted to the Surgeon General were transferred to the Secretary of the Department of Health and Human Services. 20 U.S.C. § 3508; 31 Fed. Reg. 8855 (June 25, 1966).

        **1.**       **Traditional methods of statutory construction can only lead to the conclusion that § 264(a) does not authorize the Mask Mandate.**

Thanks to the CDC's repeated attempts to stretch the boundaries of this statute, there is substantial recent guidance for interpreting its provisions. Subsection (a) is only two sentences long. The first sentence, on its face, "gives the CDC broad authority to take whatever measures it deems necessary to control the spread" of communicable diseases. *Ala. Ass'n of Realtors* 141 S. Ct. at 2488. The second sentence, however, cabins the CDC's discretion by "illustrating the kinds of measures that could be necessary." *Id.*; *see also Tiger Lily, LLC v. United States HUD*, 5 F.4th 666, 671 (6th Cir. 2021) ("Therefore, we conclude that the first sentence of § 264(a) authorizes the Secretary to take action and the second dictates what actions he may take."); *Florida v. Becerra*, 2021 WL 2514138, 2021 U.S. Dist. LEXIS 114297, at *59 (M.D. Fla. June 18, 2021) ("In short, several canons of statutory interpretation—such as *ejusdem generis*, *noscitur a sociis*, the canon against surplusage, the constitutional avoidance canon, and the major questions doctrine— gravitate against CDC's broad interpretation [of § 264(a)].") Appropriate measures include inspection, fumigation, disinfection, sanitation, pest extermination, destruction of contaminated animals or articles. 42 U.S.C. § 264(a). Additionally, § 264(a) includes a catchall provision allowing the CDC to take "other measures, as in his judgment may be necessary."

Traditional methods of statutory interpretation counsel that the catchall provision is quite limited. The interpretive canons of *ejusdem generis*[7] and *noscitur a sociis*,[8] for example, limit the power conferred by the catchall phrase to measures that are similar to the ones listed. *See United*

---

[7]     *See* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 199-213 (2012) (summarizing the *ejusdem generis* canon as "[w]here general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned").

[8]     *See* Scalia and Garner, Reading Law, 195-98 (summarizing the *noscitur a sociis* canon as "associated words bear on one another's meaning").

*States v. Koutsostamatis*, 956 F.3d 301, 306-07 (5th Cir. 2020) ("Our reading of the text is supported by tried-and-true tools of statutory interpretation—*noscitur a sociis* and *ejusdem generis*. Both canons have deep roots in our legal tradition."); *Reed v. Taylor*, 923 F.3d 411, 413 (5th Cir. 2019) ("And 'other legal process' is not a limitless catchall. The time-honored *ejusdem generis* canon confines the phrase to processes like those specifically enumerated."). The Supreme Court, without mentioning the canons explicitly, applied them in *Alabama Association of Realtors* when it said that the second sentence of § 264(a) illustrates the "kinds of measures that could be necessary." 141 S. Ct. at 2488. Importantly, it noted that all the listed measures—inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of contaminated articles or animals—shared an important feature: they are targeted at "identifying, isolating, and destroying the disease itself." *Id.*

The Mask Mandate is not like the measures that precede the catchall provision. It is not targeted at identifying, isolating, and destroying a disease. In fact, it is not targeted at all. It is a blanket rule that sweeps up the healthy and infected alike, without regard to whether a person is even capable of spreading a disease. Applying these limiting canons to § 264(a)'s catchall provision, the Court should recognize that the Mask Mandate goes beyond the authority conferred by Congress to the CDC and set it aside.

Two additional canons of construction also apply. First, the canon against surplusage advises that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (5th Cir. 2009) (alteration in original). If the "other measures" clause in § 264(a) was truly so expansive as to encompass the Mask Mandate, the preceding measures listed would carry no meaning and be mere "surplusage." Second, as explained below, the constitutional avoidance

canon counsels courts to avoid an interpretation of a statute "that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States*, 490 U.S. 858, 864 (1989). If the court reads the statute as granting the Secretary the authority to make regulations where the only limiting principle is what is in his own judgment is "necessary," his discretion is not meaningfully constrained, and the statute runs afoul of the nondelegation doctrine. *Touby*, 500 U.S. at 166.

In sum, the Mask Mandate is simply not authorized by § 264(a). The catchall provision does not allow the CDC to make and enforce a rule that is not similar in kind to the ones listed in the statute. Requiring every traveler to wear a mask is not a targeted measure to stop the spread of a communicable disease similar to fumigation, inspection, or sanitation. The Court, like other previous courts to consider this statute, should construe § 264(a) narrowly and reject the CDC's seemingly limitless understanding of its authority.

### 2.   The context and structure of § 264 as a whole also shows that the Mask Mandate is beyond the CDC's statutory authority.

When interpreting a statute, "the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *In re Application of the United States for Historical Cell Site Data*, 724 F.3d 600, 618 (5th Cir. 2013). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). The context of § 264 reveals that it was never meant to empower the CDC to issue broad public controls.

For one, it is located within "Part G—Quarantine and Inspection" of the Public Health Service Act, 78 P.L. 410, 58 Stat. 682 (Enacted July 1, 1944). "[S]tatutory titles and section headings are 'tools available for the resolution of a doubt about the meaning of a statute.'" *See*

*Fla. Dept. of Rev. v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002)). While statutory titles are not dispositive, the sections within Part G— §§ 264-272—reveal that in passing this section, Congress was focused on empowering the executive to find and target particular threats from communicable disease,[9] not institute population-wide preventative health measures.

Second, looking at § 264 specifically, all of the powers listed in subsection (a) concern property interests. *See Tiger Lily*, 992 F.3d at 522. Liberty interests, meanwhile are addressed in subsection (d). *Id.* Section 264(d) allows for the apprehension and examination of persons, but only when they are "reasonably believed to be infected with a communicable disease in a qualifying stage (A) to be moving or about to move from a State to another State; or (B) to be a probable source of infection to individuals who, while infected with such disease in a qualifying stage, will be moving from a State to another State."

But the Mask Mandate does not rely on subsection (d)—it relies on subsection (a). By relying on § 264(a), Defendants claim authority from a statute that governs property interests, not liberty interests. The decision of travelers concerning whether to wear a mask is a liberty interest, which is governed by § 264(d) and is limited to restrictions of people who are "reasonably believed

---

[9]     *See* § 264(d) (allowing apprehension and examination of "any individual reasonably believe to be infected with a  communicable disease"); § 265 (allowing suspension of the "introduction of persons and property from such countries or places" where there is serious danger of introduction of a communicable disease); § 266 (allowing "apprehension and examination, in time of war, of any individual reasonably believed (1) to be infected with such disease and (2) to be a probable source of infection to members of the armed forces of the United States or to individuals engaged in the production or transportation of arms, munitions, ships, food, clothing, or other supplies for the armed forces."). Other sections allowed for the creation of quarantine sites, § 267, assigned quarantine duties, § 268, and defined penalties for violating quarantine laws, § 271.

to be infected with a communicable disease[,]" not perpetual, population-wide controls on healthy individuals.

Read as a whole, § 264 does not authorize the CDC to issue population-wide preventive measures. Its reach is much more limited by its context. The Court should look to the context of § 264 and recognize that Defendants have overstepped their congressionally delegated authority.

**B.**     **If Section 264 authorizes the Mask Mandate, it violates the nondelegation doctrine.**

As shown above, § 264(a) does not authorize the Mask Mandate. But if the Court finds otherwise, such a capacious understanding of the CDC's authority violates the nondelegation doctrine and the Court should set it aside. *See* 5 U.S.C. § 706(2)(B). The U.S. Constitution vests "[a]ll legislative powers" in Congress. U.S. Const. Art. I § 1. Congress "may not transfer to another branch 'powers which are strictly and exclusively legislative.'" *Gundy v. United States*, 139 S. Ct. 2116, 2123 (quoting *Wayman v. Southard*, 23 U.S. 1, 10 (1825)). Delegations of legislative authority are only permissible when Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Gundy*, 139 S. Ct. at 2123 (2019) (*quoting J.W. Hampton & Co. v. United States*, 276 U.S. at 409) (alteration in original). By failing to provide a standard for which the Secretary is "directed to conform" beyond whatever he deems "necessary," § 264(a) fails to meaningfully constrain the Executive's discretion.

The prohibition of Congress delegating its legislative authority to another branch of government "is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). Allowing Congress to "merely announce vague aspirations and then assign others the responsibility of adopting legislation to realize its goals" undermines our system of government. *Gundy*, 139 S. Ct. at 2133

(Gorsuch, J., dissenting). Maintaining "the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Mistretta*, 488 U.S. at 380. Accordingly, when Congress delegates its legislative authority, it must give an intelligible principle to which the Executive is directed to conform, and it must make "clear to the delegee 'the general policy' he must pursue and the 'boundaries of [his] authority.'" *Gundy*, 139 S. Ct. at 2123, 2129 (quoting *American Power & Light v. Securities & Exchange Comm'n*, 329 U.S. 90, 105 (1946)) (alteration in Gundy). The boundaries must "meaningfully constrain[]" the Executive's discretion, *Touby*, 500 U.S. at 166.

Here, § 264(a) grants the Secretary legislative authority by giving him the power to "make and enforce" regulations without providing any meaningful boundaries. The only limitation in promulgating regulations is what "in his judgment are necessary." § 264(a). This is not a meaningful constraint.

A comparison is helpful. In *Touby*, 500 U.S. at 166, Congress gave the Attorney General authority to temporarily schedule a drug if doing so was "necessary." To make that determination, he was required to consider six factors such as the drug's history and current pattern of abuse, the scope of its abuse, and its risk the public health. *Touby*, 500 U.S. at 166. The Attorney General was also required to comply with the section identifying the criteria for each of the five schedules of drugs, and the statute required a 30-day notice. *Id.* Comparatively, § 264(a)'s guidance is not only paltry; it is not existent. Accordingly, a reading of § 264(a) that authorizes the CDC's claimed authority violates nondelegation doctrine, and the Court should set aside the Mask Mandate.

## II.   Plaintiff will suffer irreparable harm in the absence of preliminary relief.

When considering the second prong of the preliminary injunction standard, "it is not so much the magnitude [of the injury] but the irreparability that counts." *Enter. Int'l, Inc. v.*

12

*Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). Irreparable harm

is "harm for which there is no adequate legal remedy, such as an award of damages." *Ariz Dream*

*Act. Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). As long as the Mask Mandate is in

place, Plaintiff's liberty interest will continue to be burdened and the only appropriate remedy is

enjoining defendants from enforcing it.

Additionally, Plaintiff is barred by sovereign immunity from collecting money damages

from the CDC in this case. *Modoc Lassen Indian Hous. Auth. v. United States HUD*, 881 F.3d

1181, 1195 (10th Cir. 2017); *State v. United States*, 336 F.Supp.3d 664, 672 (N.D. Tex. 2018)

(reversed on other grounds). "[S]uits against federal agencies are barred by sovereign immunity

absent a specific waiver of that immunity." *Modoc*, 881 F.3d at 1195. While 5 U.S.C. § 702 waives

sovereign immunity for claims against agencies, it is limited to suits "seeking relief *other*

*than* money damages" (emphasis added)); *see also Bowen v. Massachusetts*, 487 U.S. 879, 895

(1988). Accordingly, she will never be made whole after her injury.

Also, to the extent that Section 264 violates the nondelegation doctrine, the violation of

constitutional rights alone is enough to establish irreparable injury. *See Deerfield Med. Ctr. v.*

*Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). "[T]he loss of constitutional freedoms 'for

even minimal periods of time . . . unquestionably constitutes irreparable injury.'" *BST Holdings,*

*L.L.C. v. OSHA*, ___ F.4th ___, 2021 U.S. App. LEXIS 33698, at *24 (5th Cir. Nov. 12, 2021)

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This is true whether the alleged constitutional

violation is an individual right or a structural provision. *NLRB v. Canning*, 573 U.S. 513, 570

(2014) (Scalia, J., concurring) ("[T]he Constitution's core, government-structuring provisions are

no less critical to preserving liberty than are the later adopted provisions of the Bill of Rights.");

*accord Trans World Airlines v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990) (violation of Supremacy Clause). Plaintiff has established irreparable harm.

## III.   The threatened injury to Plaintiff outweighs whatever damage a preliminary injunction may cause defendants.

The CDC is not harmed at all by being prevented from enforcing an unlawful order. *See BST Holdings*, 2021 U.S. App. LEXIS 33698, at *25 ("Any interest [an agency] may claim in enforcing an unlawful (and likely unconstitutional) [agency action] is illegitimate."). Here, the CDC's Mask Mandate was issued in excess of its statutory authority. It has no legitimate interest in enforcing such an order.

## IV.   An injunction against an unauthorized or unconstitutional action will serve the public interest.

Likewise, a preliminary injunction is in the public interest. "The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions—even, or perhaps *particularly*, when those decisions frustrate government officials." *BST Holdings*, 2021 U.S. App. LEXIS 33698, at *26. The "public interest [is] in having government agencies abide by the federal laws that govern their existence and operations." *State v. Biden*, 10 F.4th 538, 559-60 (5th Cir. 2021) (quoting *Washington v. Reno*, 35 F.3d 1093, 1102 (6th Cir. 1994)) (alteration in *Biden*). And "'[t]here is generally no public interest in the perpetuation of unlawful agency action.'" *Id.* (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)) (alteration in *Biden*). The Mask Mandate exceeds the CDC's delegated authority under § 264, and it is in the public interest to prevent Defendants from enforcing it.

It is also "always in the public interest to prevent the violation of a party's constitutional rights." *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). To the extent

that the statute allows for the CDC's capacious understanding of its authority, it violates the nondelegation doctrine. Therefore, an injunction circumscribing the CDC's authority to its proper role is in the public interest.

## CONCLUSION

The Court should issue a preliminary injunction enjoining Defendants from enforcing the Mask Mandate during the pendency of this case.

Respectfully submitted,

*/s/Matthew Miller*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
MATTHEW MILLER
Texas Bar No. 24046444
mmiller@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:     (512) 472-2700
Facsimile:     (512) 472-2728

*Attorneys for Plaintiff Elizabeth Van Duyne*

15

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on February 16, 2022,

and sent via certified mail, return receipt requested to the following:

Centers for Disease Control and Prevention
1600 Clifton Road
Atlanta, GA 30329

Rochelle P. Walensky,
in her official capacity as
Director of the Centers for Disease Control and Prevention
1600 Clifton Road
Atlanta, GA 30329

Sherri Berger,
In her official capacity as
Chief of Staff for the U.S. Dept. of Health and Human Services
1600 Clifton Road
Atlanta, GA 30329

United States of America
Chad Meachum
U.S. Attorney's Office
Northern District of Texas
1100 Commerce Street, 3rd Floor
Dallas, TX 75242

Xavier Becerra,
in his official capacity as
Secretary for the U.S. Dept. of Health and Human Services
200 Independence Avenue SW
Washington, DC 20201

*/s/Matthew Miller*
MATTHEW MILLER

16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ELIZABETH VAN DUYNE, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| CENTERS FOR DISEASE CONTROL | § | |
| AND PREVENTION, ET AL. | § | |
| *Defendants.* | § | |

## DECLARATION OF ELIZABETH VAN DUYNE

I, Elizabeth Van Duyne, hereby declare as follows:

1.      I am over the age of eighteen (18) and am competent to testify in this matter.  I have personal knowledge of the following facts and if called upon to do so could competently testify to them under oath.  As to those matters which reflect a matter of opinion, they reflect my personal opinion and judgment upon the matter.

2.      I am a resident of the State of Texas.

3.      I frequently fly from Dallas Forth Worth International Airport ("DFW") for both business and personal travel.  I estimate that I fly at least 40 round trips per year, usually on American Airlines.

4.      I currently have multiple roundtrip flights booked from DFW airport in the upcoming weeks, including flights on February 26, February 28, March 3, March 7, March 10, March 15, March 18, March 23, and March 28.

5.      I do not fall into any of the categories of people legally exempt from the Mask Mandate.

6.      I would not wear a mask at the airport or on the plane if it was not required.

Pursuant to 28 U.S.C. § 1746, I, Elizabeth Van Duyne, declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of February, 2022.

ELIZABETH VAN DUYNE