UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ELIZABETH VAN DUYNE, *et al.*,

        Plaintiffs,

     v.

CENTERS FOR DISEASE CONTROL
AND PREVENTION, *et al.*,

        Defendants.

Civil Action No. 4:22-cv-00122-O

**DEFENDANTS' OPPOSITION TO PLAINTIFF ELIZABETH
VAN DUYNE'S MOTION FOR A PRELIMINARY INJUNCTION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHAD E. MEACHAM
Acting United States Attorney

ERIC B. BECKENHAUER
Assistant Branch Director

STEPHEN M. PEZZI
MICHAEL J. GERARDI
ANDREW F. FREIDAH
JOHNNY H. WALKER
  Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: 202-305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

BACKGROUND..................................................................................................2

I.      The CDC's Transportation Mask Order ....................................................2

        a.      Statutory and Regulatory Background..........................................2

        b.      The COVID-19 Pandemic ............................................................5

        c.      The Challenged Order...................................................................7

II.     This Lawsuit .........................................................................................8

LEGAL STANDARD............................................................................................9

ARGUMENT.....................................................................................................9

I.      Plaintiff Van Duyne has not carried her burden to show that she would suffer
        irreparable harm in the absence of a preliminary injunction. .........................9

        a.      Plaintiff's one-year delay fatally undermines any claim of irreparable harm. .................9

        b.      Personal inconvenience is not irreparable harm.................................11

        c.      The unavailability of money damages is irrelevant in a case with no allegations
                of economic harm.....................................................................13

        d.      Asserting a (meritless) nondelegation claim does not relieve Plaintiff of the
                burden of showing irreparable harm..................................................13

        e.      Every court to consider the question has rejected substantially similar requests
                for injunctive relief, including the Supreme Court of the United States. ...............15

II.     The public interest weighs sharply against a preliminary injunction..........................16

III.    Plaintiff Van Duyne is unlikely to succeed on the merits..............................................17

        a.      The Transportation Mask Order is authorized by the Public Health Service
                Act..................................................................................17

        b.      The Public Health Service Act does not violate the nondelegation doctrine..............22

IV.     At most, any relief should be limited to Plaintiff Van Duyne....................................24

CONCLUSION..................................................................................................25

i

## TABLE OF AUTHORITIES

### Cases

*A.L.A. Schechter Poultry Corp. v. United States,*
  295 U.S. 495 (1935) ...............................................................................................................22

*ADT, LLC v. Cap. Connect, Inc.,*
  145 F. Supp. 3d 671 (N.D. Tex. 2015) ............................................................................ 10-11

*Alabama Association of Realtors v. HHS,*
  141 S. Ct. 2485 (2021) ....................................................................................................19, 24

*American Power & Light Co. v. SEC,*
  329 U.S. 90 (1946) ...........................................................................................................22, 23

*Benisek v. Lamone,*
  138 S. Ct. 1942 (2018) .............................................................................................................9

*Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.,*
  331 U.S. 519 (1947) ...............................................................................................................21

*Big Time Vapes, Inc. v. FDA,*
  963 F.3d 436 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2746 (2021) ...........................1, 22, 23, 24

*Boire v. Pilot Freight Carriers, Inc.,*
  515 F.2d 1185 (5th Cir. 1975)...............................................................................................10

*Bouchard Transp. Co. v. DHS,*
  No. 20-cv-1116, 2020 WL 1689869 (E.D. La. Apr. 7, 2020) ..................................................14

*Brown v. HHS,*
  4 F.4th 1220 (11th Cir. 2021), *vacated as moot*, 20 F.4th 1385 (11th Cir. Dec. 29, 2021) ...................14

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ...............................................................................................................24

*City of Harrisonville v. W.S. Dickey Clay Mfg. Co.,*
  289 U.S. 334 (1933) ...............................................................................................................12

*Competitive Enter. Inst. v. Dep't of Transp.,*
  863 F.3d 911 (D.C. Cir. 2017)...............................................................................................17

*Consol. Canal Co. v. Mesa Canal Co.,*
  177 U.S. 296 (1900) ...............................................................................................................11

*Corbett v. TSA,*
  19 F.4th 478 (D.C. Cir. 2021)..................................................................................... 1, 8, 19

*Dennis Melancon, Inc. v. City of New Orleans*,
    703 F.3d 262 (5th Cir. 2012) ................................................................................................11

*Dep't of Homeland Sec. v. New York*,
    140 S. Ct. 599 (2020) ...........................................................................................................25

*Elrod v. Burns*,
    427 U.S. 347 (1976) .............................................................................................................14

*Embarcadero Techs., Inc. v. Redgate Software, Inc.*,
    No. 17-cv-444, 2017 WL 5588190 (W.D. Tex. Nov. 20, 2017) ...........................................10

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) .........................................................................................................24

*Gonannies, Inc. v. Goupair.Com, Inc.*,
    464 F. Supp. 2d 603 (N.D. Tex. 2006) .................................................................................11

*H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*,
    No. 09-cv-390, 2009 WL 1766095 (N.D. Tex. June 23, 2009) ..............................................9

*Hartman v. Acton*,
    No. 2:20-cv-1952, --- F. Supp. 3d ---, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020) ........14

*House the Homeless, Inc. v. Widnall*,
    94 F.3d 176 (5th Cir. 1996) ...................................................................................................9

*Johnson v. Baylor Univ.*,
    214 F.3d 630 (5th Cir. 2000) ...............................................................................................14

*Jordan v. Fisher*,
    823 F.3d 805 (5th Cir. 2016) .................................................................................................9

*Klaassen v. Trs. of Ind. Univ.*,
    7 F.4th 592 (7th Cir. 2021) ...........................................................................................13, 21

*Kleinman v. City of Austin*,
    310 F. Supp. 3d 770 (W.D. Tex. 2018) ................................................................................11

*L.T. v. Zucker*,
    No. 21-cv-1034, 2021 WL 4775215 (N.D.N.Y. Oct. 13, 2021) ...........................................17

*Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*,
    No. 05-cv-5931, 2006 WL 8456316 (E.D. La. Mar. 22, 2006) ............................................14

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
    No. 17-cv-3200, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) .........................................10

*Lichter v. United States,*
    334 U.S. 742 (1948) ................................................................................................23

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    140 S. Ct. 2367 (2020) ...........................................................................................20

*Loc. 553, Transp. Workers Union of Am., AFL-CIO v. E. Air Lines, Inc.,*
    695 F.2d 668 (2d Cir. 1982) ..................................................................................11

*Louisiana v. Dep't of Commerce,*
    No. 21-cv-1523, --- F. Supp. 3d ----, 2021 WL 4125058 (E.D. La. Sept. 9, 2021) ..............13

*Louisiana v. Becerra,*
    20 F.4th 260 (5th Cir. 2021) ..................................................................................25

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ....................................................................................2, 24, 25

*Mahwikizi v. CDC,*
    No. 21-cv-3467, 2022 WL 602452 (N.D. Ill. Mar. 1, 2022) ..................................25

*Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.,*
    No. 08-cv-547, 2009 WL 175132 (E.D. Tex. Jan. 23, 2009) ..................................9

*McNeilly v. Land,*
    684 F.3d 611 (6th Cir. 2012) ..................................................................................14

*Miranda ex rel. M.M. v. Alexander,*
    No. 21-cv-535, 2021 WL 4352328 (M.D. La. Sept. 24, 2021) ..............................17

*Mistretta v. United States,*
    488 U.S. 361 (1989) ...............................................................................................23

*Monumental Task Comm., Inc. v. Foxx,*
    157 F. Supp. 3d 573 (E.D. La. 2016), *aff'd,* 678 F. App'x 250 (5th Cir. 2017) ..............15

*Nat'l Broad. Co. v. United States,*
    319 U.S. 190 (1943) ...............................................................................................23

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
    545 U.S. 967 (2005) ...............................................................................................21

*NLRB v. Noel Canning,*
    573 U.S. 513 (2014) ...............................................................................................14

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ....................................................................................9

*Panama Refin. Co. v. Ryan*,
    293 U.S. 388 (1935) ..............................................................................................22

*Pennsylvania Dep't of Corr. v. Yeskey*,
    524 U.S. 206 (1998) ..............................................................................................21

*Quince Orchard Valley Citizens Ass'n v. Hodel*,
    872 F.2d 75 (4th Cir. 1989) .................................................................................10

*Red River United v. Caddo Par. Sch. Bd.*,
    No. 21-cv-01193, 2021 WL 2125000 (W.D. La. May 25, 2021)........................14

*Ronaldo Designer Jewelry, Inc. v. Cox*,
    No. 17-cv-2, 2017 WL 3879095 (N.D. Miss. Sept. 5, 2017) .............................10

*Rotkiske v. Klemm*,
    140 S. Ct. 355 (2019) ............................................................................................20

*Sepulvado v. Jindal*,
    729 F.3d 413 (5th Cir. 2013) ..................................................................................9

*Shafer v. Hill*,
    No. 08-cv-395, 2008 WL 4367291 (N.D. Tex. Sept. 23, 2008) .........................11

*Smith v. Turner*,
    48 U.S. 283 (1849)...................................................................................................3

*Talleywhacker, Inc. v. Cooper*,
    465 F. Supp. 3d 523 (E.D.N.C. 2020) .................................................................13

*Texas v. United States*,
    328 F. Supp. 3d 662 (S.D. Tex. 2018)..................................................................11

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ................................................................................25

*Tiger Lily, LLC v. HUD*,
    5 F.4th 666 (6th Cir. 2021) .............................................................................19, 20

*TIGI Linea Corp. v. Pro. Prods. Grp., LLC*,
    No. 4:19-cv-00840, 2020 WL 3154857 (E.D. Tex. May 20, 2020),
    *report & recommendation adopted*, 2020 WL 3130139 (E.D. Tex. June 12, 2020) .....................................10

*Trans World Airlines, Inc. v. Mattox*,
    897 F.2d 773 (5th Cir. 1990) ................................................................................14

*True Health Diagnostics, LLC v. Azar*,
    392 F. Supp. 3d 666 (E.D. Tex. 2019)..................................................................14

*Trump v. Hawaii,*
  138 S. Ct. 2392 (2018)..........................................................................................................24

*U.S. Navy SEALs 1-26 v. Biden,*
  No. 21-cv-01236-O, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022),
  *denying stay pending appeal*, 2022 WL 594375 (5th Cir. Feb. 28, 2022) ........................14

*United States v. Jones,*
  132 F.3d 232 (5th Cir. 1998) ...............................................................................................23

*United States v. Mecham,*
  950 F.3d 257 (5th Cir. 2020) ...............................................................................................24

*United States v. Mirza,*
  454 F. App'x 249 (5th Cir. 2011)..........................................................................................23

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) ...............................................................................................................12

*Villareal v. Saenz,*
  No. 20-cv-571, 2021 WL 1940620 (W.D. Tex. May 14, 2021),
  *report & recommendation adopted*, 2021 WL 4057570 (W.D. Tex. Aug. 4, 2021) .......................10

*Wansley v. Mississippi Dep't of Corr.,*
  No. 4:10-cv-149, 2013 WL 3168261 (S.D. Miss. June 20, 2013)..........................................12

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982) ...................................................................................................2, 11, 12

*White v. Carlucci,*
  862 F.2d 1209 (5th Cir. 1989)..........................................................................................9, 17

*Whitman v. American Trucking Ass'ns,*
  531 U.S. 457 (2001) ..........................................................................................................22, 23

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ...........................................................................................................2, 9, 12

*Wreal, LLC v. Amazon.com, Inc.,*
  840 F.3d 1244 (11th Cir. 2016) ...........................................................................................10

*Yakus v. United States,*
  321 U.S. 414 (1944) ...............................................................................................................23

**Statutes**

21 U.S.C. § 387a(b) .......................................................................................................................22

42 U.S.C. § 264..........................................................................................................................*passim*

42 U.S.C. §§ 264-272 ..................................................................................................3

An Act to Establish a Department of Education, and for other purposes,
   Pub. L. No. 96-88, 93 Stat. 668 (1979) (codified at 20 U.S.C. § 3508(b)) ...............3

Public Health Service Act,
   58 Stat. 703 (1944) (codified at 42 U.S.C. § 264(a)) ..............................................1

**Legislative Materials**

Act of Feb. 15, 1893, 52 Cong. ch. 114, 27 Stat. 449 (1893) .................................3

Act of Feb. 25, 1799, 5 Cong. ch. 12, 1 Stat. 619 (1799) .......................................3

Act of May 27, 1796, 4 Cong. ch. 31, 1 Stat. 474 (1796) (repealed 1799).............2-3

*Consolidation & Revision of Laws Relating to the Public Health Service,*
   H.R. Rep. No. 1364 78th Cong. 2d Sess. (1944) ....................................................3

**Administrative and Executive Materials**

42 C.F.R. pt. 70 .......................................................................................................4

42 C.F.R. § 70.2 ....................................................................................................4, 5

42 C.F.R. § 70.3 .......................................................................................................5

42 C.F.R. § 70.6 .......................................................................................................5

42 C.F.R. § 70.12 .....................................................................................................5

42 C.F.R. § 71.31(b) ................................................................................................5

42 C.F.R. § 71.32(b) ................................................................................................5

*Control of Communicable Diseases, Apprehension and Detention of Persons With Specific Diseases, Transfer of Regulations,*
   65 Fed. Reg. 49,906 (Aug. 16, 2000) .....................................................................4

*Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak,*
   85 Fed. Reg. 15,337 (Mar. 13, 2020).....................................................................5, 6

*Interstate Quarantine,*
   12 Fed. Reg. 3189 (May 16, 1947) (codified at 42 C.F.R. § 12.3 (1947)) ...............4

*Interstate Quarantine,*
   12 Fed. Reg. 6210 (Sept. 16, 1947) (recodifying provision at 42 C.F.R. § 73.2) ....4

*Interstate Quarantine Regulations,*
   11 Fed. Reg. 9389 (Aug. 27, 1946).........................................................................4

*Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*,
86 Fed. Reg. 8025 (Feb. 3, 2021) ........................................................................6, 7, 8, 21

*Proposed Data Collections Submitted for Public Comment and Recommendations*,
65 Fed. Reg. 19,772 (Apr. 12, 2000) ................................................................................4

*Reorganization Plan No. 3 of 1966*,
31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610 (1966) ................................................3

**<u>Other Authorities</u>**

A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 94 (2012) ...............20

CDC, *COVID-19 by County* (updated Feb. 25, 2022),
https://perma.cc/2WTC-KLLG ................................................................................6

CDC, *COVID Data Tracker*,
https://covid.cdc.gov/covid-data-tracker ................................................................6

CDC, *COVID Data Tracker*,
https://perma.cc/9YTC-XF94 ................................................................................16

CDC, *How COVID 19 Spreads* (updated July 14, 2021),
https://perma.cc/R38B-WAPL ................................................................................5

CDC, *Omicron Variant: What You Need to Know* (updated Dec. 20, 2021),
https://perma.cc/UH3B-FESV ................................................................................6

CDC, *Summary of Recent Changes* (updated Feb. 25, 2022),
https://perma.cc/U3EH-8ZLW ................................................................................11

CDC, *When You've Been Fully Vaccinated* (updated July 27, 2021),
https://perma.cc/C3LC-HMLF ................................................................................6

Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (2d ed. 1995) ...............9

HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020),
https://perma.cc/VZ5X-CT5R ................................................................................6

https://covid.cdc.gov/covid-data-tracker/#vaccinations ................................................................7

Sanitation, *Merriam-Webster.com Dictionary*,
https://perma.cc/9ARR-YKYH ................................................................................18

State of Texas, Exec. Order GA-29, *Relating to the use of face coverings during the COVID-19 disaster*
(July 2, 2020), https://perma.cc/KB4T-4CY4, *rescinded by,*
State of Texas, Exec. Order GA-34 (March 2, 2021), https://perma.cc/KTR5-AGY4 ................20

TSA, *Checkpoint Travel Numbers*,
    https://perma.cc/FZ2Y-TAWL..............................................................................................................7

*Wall v. TSA*, No. 21A198,
    https://perma.cc/E7UD-HMBM.................................................................................................16

YALEMEDICINE.ORG, *Why Doctors Wear Masks* (Sept. 1, 2020),
    https://perma.cc/TE77-8PBH................................................................................................1, 18

## INTRODUCTION

Congress has authorized the Secretary of Health and Human Services, through the Centers for Disease Control and Prevention (CDC), to adopt "such regulations as in [the agency's] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions [of the United States], or from one State or possession into any other State or possession." Public Health Service Act ("PHSA"), ch. 373, § 361(a), 58 Stat. 703 (1944) (codified at 42 U.S.C. § 264(a)). In particular, Congress explicitly authorized "sanitation" measures, as well as all "other measures" that are akin to "sanitation" measures. *Id.* Invoking that authority, the CDC has since February 2021 generally required individuals to wear masks when traveling on public-transportation conveyances like airplanes, trains, and buses. The order was issued to reduce the spread of COVID-19—"one of the greatest threats to the operational viability of the transportation system and the lives of those on it seen in decades." *Corbett v. TSA*, 19 F.4th 478, 480 (D.C. Cir. 2021).

Plaintiffs Elizabeth Van Duyne and the State of Texas allege that (1) the CDC's order exceeds the agency's statutory authority; and (2) if it does not, then the relevant provision of the Public Health Service Act, 42 U.S.C. § 264(a), violates the nondelegation doctrine.

Both claims are meritless. The CDC has explicit statutory authority to "prevent the introduction, transmission, or spread of communicable diseases" in the United States, including by imposing "sanitation" measures. 42 U.S.C. § 264(a). Masking is a conventional sanitation measure that directly reduces the spread of disease, which is why "doctors have been wearing medical-grade N95 or surgical masks . . . during surgeries or patient interactions as part of their daily routines, for many decades." YALEMEDICINE.ORG, *Why Doctors Wear Masks* (Sept. 1, 2020), https://perma.cc/TE77-8PBH. As for Plaintiffs' nondelegation claim, it is foreclosed by binding precedent. As the Fifth Circuit recently emphasized, the Supreme Court "has found only two delegations to be unconstitutional. Ever. And none in more than eighty years." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 446 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2746 (2021). There is nothing unusual about this statute that would warrant a different result.

1

Although the merits are straightforward, there is no occasion for the Court to reach the merits at this stage. That is because the only question currently before the Court is whether Plaintiff Van Duyne has carried her burden to justify the "extraordinary remedy" of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). She has not. By her own account, she has flown frequently over the past year, while the mask requirement was in effect. She may regard wearing a mask as an inconvenience, but a court should not invoke extraordinary equitable powers "to restrain an act the injurious consequences of which are merely trifling." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982). Furthermore, the relief that Plaintiff Van Duyne seeks—more than a year after the order was first issued—would come at the direct expense of her fellow travelers, including children too young to be vaccinated, those who have not been vaccinated for medical or religious reasons, and the elderly or immunocompromised. There is no basis to conclude that Plaintiff Van Duyne's personal preference to fly without a mask during a pandemic outweighs the countervailing interests of other passengers, or the public interest more generally. Accordingly, her motion for a preliminary injunction should be denied.

Even if there were any basis to issue a preliminary injunction, at a minimum, it should be limited to Plaintiff Van Duyne. She alone moved for a preliminary injunction; the only other Plaintiff—the State of Texas—conspicuously declined to join in that motion or to file any declaration claiming irreparable harm. As the Supreme Court has made clear, "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quotation marks omitted).

**BACKGROUND**

## I.    The CDC's Transportation Mask Order

### a.    Statutory and Regulatory Background

The federal government has a long history of acting to combat the spread of communicable diseases. Congress enacted the first federal quarantine law in 1796 in response to yellow-fever outbreaks in Philadelphia and New York, delegating to President Washington the authority to direct federal officials to help states enforce quarantine laws. Act of May 27, 1796, 4 Cong. ch. 31, 1 Stat.

474 (1796) (repealed 1799); *see Smith v. Turner*, 48 U.S. 283, 300 (1849).  Following another yellow-fever outbreak two years later, Congress replaced the 1796 Act with a federal inspection system for maritime quarantines.  Act of Feb. 25, 1799, 5 Cong. ch. 12, 1 Stat. 619 (1799).  And in 1893, Congress authorized the Secretary of the Treasury to adopt additional regulations to prevent the introduction of communicable disease into the United States or across state lines where the Secretary considered state or local regulation inadequate.  Act of Feb. 15, 1893, 52 Cong. ch. 114, 27 Stat. 449 (1893).

Congress enacted the Public Health Service Act in 1944.  *Consolidation & Revision of Laws Relating to the Public Health Service*, H.R. Rep. No. 1364 78th Cong. 2d Sess., at 1 (1944).  In Section 361(a), Congress broadened the federal government's "basic authority to make regulations to prevent the spread of disease into this country or between the States."  *Id.* at 24.  For example, Congress removed references to specific diseases to provide federal health authorities flexibility to respond to new types of contagion and "expressly sanction[ed] the use of conventional public-health enforcement methods" by the government in disease-control efforts.  *Id.* at 24-25.

The resulting statute, 42 U.S.C. § 264—part of a broader statutory scheme empowering the Department of Health and Human Services (HHS) to take wide-ranging public-health actions, *see id.* §§ 264-272—authorizes the Secretary of HHS[1] "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession."  *Id.* § 264(a).  The second sentence of subsection (a) further clarifies that "[f]or purposes of carrying out and enforcing such regulations," the Secretary "may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary."  *Id.*

---

[1] Although the statute assigns authority to the Surgeon General, all statutory powers and functions of the Surgeon General were transferred to the Secretary of HHS in 1966, 31 Fed. Reg. 8855 (June 25, 1966), 80 Stat. 1610 (1966); *see also* Pub. L. No. 96-88, § 509(b), 93 Stat. 668, 695 (1979) (codified at 20 U.S.C. § 3508(b)).  The Secretary has retained these authorities despite the reestablishment of the Office of the Surgeon General in 1987.

Subsection (b) imposes specific limits on the Secretary's ability to "provide for the apprehension, detention, or conditional release of individuals"—a power not specifically identified in subsection (a)—permitting such impositions on a person's physical movement only for diseases specified by Executive Order. *Id.* § 264(b). Subsections (c) and (d) set further limits on the detention of individuals. *See id.* § 264(c)-(d). The final subsection provides that the statute and any regulation adopted thereunder supersede state law "to the extent that such a provision conflicts with an exercise of Federal authority." *Id.* § 264(e).

The Secretary has promulgated several regulations implementing these provisions and delegating their enforcement to CDC. *See* 42 C.F.R. pt. 70; *Control of Communicable Diseases, Apprehension and Detention of Persons With Specific Diseases, Transfer of Regulations*, 65 Fed. Reg. 49,906, 49,907 (Aug. 16, 2000). In 1947, the Secretary promulgated the regulation titled "measures in the event of inadequate local control," *see Interstate Quarantine*, 12 Fed. Reg. 3189 (May 16, 1947) (codified at 42 C.F.R. § 12.3 (1947)), following publication of a "general notice of proposed rule making" in the Federal Register, *see Interstate Quarantine Regulations*, 11 Fed. Reg. 9389 (Aug. 27, 1946). The regulation has been relocated several times without substantive change. *See, e.g.*, *Interstate Quarantine*, 12 Fed. Reg. 6210 (Sept. 16, 1947) (recodifying provision at 42 C.F.R. § 73.2). In 2000, again without any alteration to its substance, the regulation was repromulgated to transfer, in part, authority from the Food & Drug Administration to CDC, *see* Final Rule, *Control of Communicable Diseases; Apprehension and Detention of Persons With Specific Diseases; Transfer of Regulations*, 65 Fed. Reg. 49,906 (Aug. 16, 2000), and the agency provided a notice-and-comment period, *see Proposed Data Collections Submitted for Public Comment and Recommendations*, 65 Fed. Reg. 19,772 (Apr. 12, 2000). Although the notice specifically requested comments regarding proposed data collection projects, *see id.* at 19,772, it referenced the legal authorities at issue here, stating that "[t]he regulations . . . being assumed by CDC were developed to facilitate Federal action in the event of large outbreaks of disease requiring a coordinated effort involving several States, or in the event of inadequate local control." *Id.*

That regulation, now codified at 42 C.F.R. § 70.2, provides the CDC with broad discretion to address the uncontrolled spread of communicable disease. Specifically, if the CDC Director

"determines that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases" between or among states, he is empowered to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary." 42 C.F.R. § 70.2. These include measures like "inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." *Id.*

In addition, separate longstanding regulations provide that "[w]henever the Director has reason to believe that any arriving carrier . . . is or may be infected . . . with a communicable disease, he/she may require detention, disinfection, . . . or other related measures respecting the carrier or article or thing as he/she considers necessary to prevent the introduction, transmission, or spread of communicable diseases." 42 C.F.R. § 71.32(b); *see also id.* § 71.31(b) (allowing "detention of a carrier until the completion of the measures outlined in this part that are necessary to prevent the introduction or spread of a communicable disease"). And other regulations authorize CDC to limit interstate travel of infected persons, *see id.* § 70.3, to apprehend and detain persons, *id.* § 70.6, and to conduct medical examinations, *id.* § 70.12, to control the spread of disease.

### b.     The COVID-19 Pandemic

In December 2019, the novel coronavirus later named SARS-CoV-2 was first detected in Wuhan, Hubei Province, in the People's Republic of China. *See Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337 (Mar. 13, 2020). The virus causes a respiratory disease known as COVID-19. *Id.* COVID-19 poses a risk of "severe" respiratory illness, meaning that infected persons may require hospitalization, intensive care, or the use of a ventilator. 85 Fed. Reg. at 55,292. Severe cases may be fatal. *Id.* The virus that causes COVID-19 transmits "very easily and sustainably," *id.* at 55,293, including when an individual "[b]reath[es] in air when close to an infected person," CDC, *How COVID 19 Spreads* (updated July 14, 2021), https://perma.cc/R38B-WAPL. Persons not displaying symptoms are capable of transmitting the virus. 85 Fed. Reg. at 55,292.

On January 31, 2020, the Secretary of Health and Human Services declared a public-health emergency.  HHS, *Determination that a Public Health Emergency Exists* (Jan. 31, 2020), https://perma.cc/VZ5X-CT5R.  On March 11, 2020, the World Health Organization classified COVID-19 as a pandemic. 85 Fed. Reg. at 15,337.  And on March 13, 2020, then-President Trump declared the outbreak a national emergency.  *Id.*  By late August 2020, the virus had spread to all 50 states.  *Id.* at 55,292.  As of the date of this filing, it has infected more than 79 million and killed more than 953,000 people in the United States alone, and many more around the world.  *See* CDC, *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker (last visited Mar. 4, 2022).

To combat the spread of this highly contagious, deadly virus, governments at all levels have taken "unprecedented or exceedingly rare actions" to protect the public.  85 Fed. Reg. at 55,292. These include border closures, travel restrictions, stay-at-home orders, vaccine and testing mandates, and mask requirements.  *See id.*  Mask wearing in particular "is one of the most effective strategies available for reducing COVID-19 transmission."  86 Fed. Reg. at 8025.

By spring of 2021, significant progress had been made with vaccinations and falling case counts in the United States, which led the CDC to relax its mask-wearing guidance for fully vaccinated individuals, in some settings.  But shortly thereafter, a more transmissible and more severe variant of the original virus (the Delta variant) began circulating, leading the CDC to recommend that, "[t]o maximize protection from the Delta variant and prevent possibly spreading it to others," even fully vaccinated individuals should "wear a mask indoors in public" when "in an area of substantial or high transmission."  CDC, *When You've Been Fully Vaccinated* (updated July 27, 2021), https://perma.cc/C3LC-HMLF.  More recently, the new, even more transmissible Omicron variant circulated rapidly—breaking records for cases in many states, including Texas.  *See* CDC, *Omicron Variant: What You Need to Know* (updated Dec. 20, 2021), https://perma.cc/UH3B-FESV; *COVID Data Tracker*, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases (last visited Mar. 4, 2022). The CDC continues to update its mask-wearing recommendations and guidelines based on the latest available data and sound public-health policy.  *See, e.g.*, CDC, *COVID-19 by County* (updated Feb. 25, 2022), https://perma.cc/2WTC-KLLG (relaxing county-by-county mask recommendations).

Meanwhile, for the first time in almost two years, passenger volume in commercial air travel has been approaching (and occasionally, even surpassing) pre-pandemic levels, *see* TSA, *Checkpoint Travel Numbers*, https://perma.cc/FZ2Y-TAWL (last visited Mar. 4, 2022), which necessarily increases the risk of viral transmission amongst passengers, crew, and staff.  And as of this filing, only about 65% of the country is fully vaccinated, and only 44% of those fully vaccinated has received a booster dose. *See* https://covid.cdc.gov/covid-data-tracker/#vaccinations (last visited Mar. 4, 2022).

### c.      The Challenged Order

In late January 2021, the CDC issued the transportation mask order, which is the subject of Plaintiff Van Duyne's preliminary-injunction motion. *See* Ex. 1, CDC, *Order Under Section 361 of the Public Health Service Act, Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs*, 86 Fed. Reg. 8025 (Feb. 3, 2021).  Generally, the order requires persons to "wear masks over the mouth and nose when traveling on any conveyance . . . into or within the United States" and "at transportation hubs." *Id.* at 8026.

The scientific justifications are straightforward: "Masks help prevent people who have COVID-19, including those who are pre-symptomatic or asymptomatic, from spreading the virus to others." *Id.* at 8028.  They "also provide personal protection to the wearer by reducing inhalation of" "virus-laden droplets." *Id.* "The community benefit of wearing masks . . . is due to the combination of these effects; individual prevention benefit increases with increasing numbers of people using masks consistently and correctly." *Id.*

The order also explains why mask-wearing is especially important on public transportation and in commercial air travel: "[t]raveling on multi-person conveyances increases a person's risk of getting and spreading COVID-19 by bringing persons in close contact with others, often for prolonged periods[.]" *Id.* at 8029.  "Furthermore, given how interconnected most transportation systems are across the nation and the world, local transmission can grow even more quickly into interstate and international transmission when infected persons travel on non-personal conveyances without wearing a mask and with others who are not wearing masks." *Id.*  And in the context of commercial air travel in particular, "[s]ocial distancing may be difficult if not impossible." *Id.*

Beyond the obvious public-health goals, the order also explains that "[r]equiring masks will help us control this pandemic and aid in re-opening America's economy." *Id.* That is because "America's transportation systems" are "essential for America's economy and other bedrocks of American life"—whether to "carry life-saving medical supplies and medical providers into and across the nation to our hospitals, nursing homes, and physicians' offices," to "bring food and other essentials to our communities," or to "bring America's workforce to their jobs." *Id.*

The order exempts "child[ren] under the age of 2," and anyone "with a disability who cannot wear a mask, or cannot safely wear a mask," among others. *Id.* at 8027. It also exempts (among other things) "[p]rivate conveyances operated solely for personal, non-commercial use." *Id.* at 8028. And it does not apply "[w]hile eating, drinking, or taking medication, for brief periods." *Id.* at 8027. Although the order could theoretically be enforced through criminal penalties, "CDC does not intend to rely primarily on . . . criminal penalties but instead strongly encourages and anticipates widespread voluntary compliance[.]" *Id.* at 8030 n.33.[2]

## II.  <u>This Lawsuit</u>

Plaintiffs filed this lawsuit on February 16, 2022, naming as Defendants CDC and HHS, as well as several senior CDC and HHS officials. Compl., ECF No. 1. Plaintiffs—Elizabeth Van Duyne[3] and the State of Texas—claim that (1) the CDC's transportation mask order exceeds the agency's statutory authority, *id.* ¶¶ 40-47, and (2) if it does not, then the Public Health Service Act, 42 U.S.C. § 264(a), violates the nondelegation doctrine, Compl. ¶¶ 48-51. Plaintiff Van Duyne alone moved for a preliminary injunction. *See* ECF No. 3 ("Mot.").

---

[2] The Transportation Security Administration (TSA) has also issued a series of Security Directives, through which TSA assists with the enforcement of the CDC's mask order. *See generally Corbett v. TSA*, 19 F.4th 478 (D.C. Cir. 2021) (holding that TSA Security Directives requiring masks in public-transportation systems are lawful); *see also id.* at 490 (Henderson, J., dissenting) (dissenting on the basis that plaintiff lacked standing, but also noting that, "[o]n the merits, this petition for review is a slam dunk loser"). TSA is not a party here.

[3] Although Plaintiff Van Duyne is a Member of the United States Congress, *see* Compl. ¶ 27, she appears to be bringing this lawsuit solely in her capacity as a private citizen.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. "The Fifth Circuit frequently cautions that . . . 'the decision to grant a preliminary injunction is to be treated as the exception rather than the rule.'" *Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*, No. 08-cv-547, 2009 WL 175132, at *6 (E.D. Tex. Jan. 23, 2009) (quoting *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996)). The party seeking a preliminary injunction thus bears the burden to show: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016) (quoting *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013)). Due to its "extraordinary" nature, no preliminary-injunction motion should be "granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Id.* (citation omitted).

## ARGUMENT

I.   **Plaintiff Van Duyne has not carried her burden to show that she would suffer irreparable harm in the absence of a preliminary injunction.**

To obtain a preliminary injunction, "[w]ithout question, the irreparable harm element must be satisfied by independent proof, or no injunction may issue." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). Plaintiff Van Duyne has not met her burden.

a.   **Plaintiff's one-year delay fatally undermines any claim of irreparable harm.**

"[A] party requesting a preliminary injunction must generally show reasonable diligence" in order to substantiate the asserted need for emergency relief. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). As the Fifth Circuit has recognized, a "long delay by plaintiff after learning of the threatened harm may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (quoting Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (2d ed. 1995)); *accord H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*, No. 09-cv-390, 2009 WL 1766095, at *4 (N.D. Tex.

June 23, 2009) ("Delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction.  Absent a good explanation, a substantial period of delay militates against . . . a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.") (citation omitted).

Here, Plaintiff Van Duyne waited *over a year* after issuance of the order to seek a preliminary injunction, even though there is no doubt she was aware of it, as someone who allegedly "averages more than 80 flights per year[.]"  Compl. ¶ 28.  Comparable (or far shorter) delays are often dispositive—indeed, the Fifth Circuit has affirmed a district court's denial of temporary relief where the movant "waited three months before petitioning the district court" for that relief.  *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975).  "District courts in this circuit have generally declined to grant injunctive relief where a plaintiff, without sufficient explanation, delayed for five months or more in seeking injunctive relief."  *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 17-cv-2, 2017 WL 3879095, at *10 (N.D. Miss. Sept. 5, 2017) (collecting cases).  Overall, "courts generally consider anywhere from a three-month delay to a six-month delay enough to militate against issuing injunctive relief."  *Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 17-cv-3200, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019).[4]

Sometimes, a delay in seeking preliminary relief has been excused if there is "a reasonable explanation," such as the plaintiff conducting "good faith efforts to investigate[.]"  *ADT, LLC v. Cap.*

---

[4] *See also, e.g., Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm."); *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (affirming denial of preliminary injunction, calling six months "a long delay in seeking relief" that "indicates that speedy action is not required") (citation omitted); *TIGI Linea Corp. v. Pro. Prods. Grp., LLC*, No. 4:19-cv-00840, 2020 WL 3154857, at *7 (E.D. Tex. May 20, 2020) ("Courts have found that the expiration of several months between discovering an act of breach and seeking injunctive relief should factor into the court's analysis and could serve to rebut a claim of irreparable harm."), *report & recommendation adopted*, 2020 WL 3130139 (E.D. Tex. June 12, 2020); *Villareal v. Saenz*, No. 20-cv-571, 2021 WL 1940620, at *4 (W.D. Tex. May 14, 2021), *report & recommendation adopted*, 2021 WL 4057570 (W.D. Tex. Aug. 4, 2021) ("Plaintiffs waited nearly nine months before seeking injunctive relief.  This delay casts doubt on the irreparability of the harm alleged."); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 17-cv-444, 2017 WL 5588190, at *3 (W.D. Tex. Nov. 20, 2017) (five- and ten-month delays were "fatal" to a "request for a preliminary injunction").

*Connect, Inc.*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015). But that excuse is unavailable here—Plaintiff not only knew about the order, but has apparently complied with it dozens of times, *see* Compl. ¶ 28—which is difficult to square with the idea that a few additional, upcoming flights are now going to cause some significant irreparable harm that requires judicial intervention on an emergency basis, before the Court can even consider the merits in the normal course. And Plaintiff has not provided "a good explanation" for her delay, *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (citation omitted)—indeed, in her motion, she provided no explanation at all.[5]

In sum, even if Plaintiff had put forth "sufficient proof of irreparable damage and ha[d] shown that" she has "no other viable legal remedy," she "cannot prevail on the legal element of irreparable harm due to [her] delay[.]" *Texas v. United States*, 328 F. Supp. 3d 662, 740 (S.D. Tex. 2018).

**b.  Personal inconvenience is not irreparable harm.**

Because "an injunction is an equitable remedy," one should not issue "'to restrain an act the injurious consequences of which are merely trifling.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982) (quoting *Consol. Canal Co. v. Mesa Canal Co.*, 177 U.S. 296, 302 (1900)); *Kleinman v. City of Austin*, 310 F. Supp. 3d 770, 780 (W.D. Tex. 2018) (same); *Shafer v. Hill*, No. 08-cv-395, 2008 WL 4367291, at *6 (N.D. Tex. Sept. 23, 2008) (same). In other words, "[p]ersonal inconvenience is not the irreparable harm that warrants preliminary injunctive relief." *Loc. 553, Transp. Workers Union of Am., AFL-CIO v. E. Air Lines, Inc.*, 695 F.2d 668, 677 (2d Cir. 1982).[6]

_____

[5] In a recent filing about the briefing schedule, Plaintiff tried to justify her delay by suggesting that "the guidance and regulations surrounding masking during interstate travel have been unpredictable." Status Report, ECF No. 9, at 3. In fact, as Defendants explained in that filing, "the only order challenged here has been in effect and unchanged for over a year." *Id.* at 4; *see also* CDC, *Summary of Recent Changes* (updated Feb. 25, 2022), https://perma.cc/U3EH-8ZLW (noting that, although the order itself remains unchanged, as a matter of enforcement discretion CDC will no longer enforce the requirement to "wear[] masks on buses or vans operated by public or private school systems"). In addition, on Plaintiff's theory, the order was unlawful (and allegedly caused her irreparable harm) from the first day it was issued—none of the claims in this case turn on whether the masking requirement was (or remains) a rational policy judgment. *See* Status Report at 4.

[6] The Fifth Circuit has "long recognized that, when the threatened harm is *more* than de minimis, it is not so much the magnitude but the irreparability that counts for purposes of a preliminary injunction." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (emphases altered and citation omitted). But the converse is also true: de minimis harm, trifles, or

Here, the challenged order requires quite little: when not eating or drinking, or absent some other exemption, Plaintiff Van Duyne is currently expected to wear a mask during commercial air travel—the sort of requirement that is now familiar to individuals across the globe, whether imposed by governments, private businesses, or hospitals. And it is plainly familiar to Plaintiff Van Duyne, who apparently flies dozens of times per year. *See* Van Duyne Decl. ¶ 3, ECF No. 3. Importantly, unlike most other litigants who have challenged the CDC's order, *see infra* at 25 n.16, Plaintiff Van Duyne does not allege that she has some medical or religious reason for being unable to wear a mask— she just doesn't want to. *See* Van Duyne Decl. ¶¶ 5-6. But her mere disagreement with the order, or a different policy preference, cannot be the basis for irreparable harm. After all, "the federal courts" are not "publicly funded forums for the ventilation of public grievances[.]" *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982).

To be sure, when litigating this case to final judgment, the trifling nature of the alleged harm might be analyzed differently. But at this stage, Plaintiff Van Duyne's theory of harm ignores that a preliminary injunction "is not a remedy which issues as of course." *Weinberger*, 456 U.S. at 311 (quoting *City of Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337-38 (1933)). Rather, it is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. It should not issue here to relieve Plaintiff Van Duyne of a minor inconvenience that protects her fellow travelers from an airborne respiratory virus that has killed nearly a million Americans.

Plaintiff Van Duyne claims that the order "burdens her liberty interest by taking away her choice to not wear a mask." Cover Mot. at 2. But that theory of irreparable harm could be adapted to fit *any* legal obligation. For example, seat-belt laws likewise took away the "liberty" to choose driving (or flying) without a seat belt, but losing that choice was not irreparable harm. *Cf. Wall v. CDC*, No. 21-cv-975, ECF No. 255, Order at 5 (M.D. Fla. Mar. 4, 2022) ("[T]he outright refusal to wear a mask, without possessing a valid exemption from the [CDC order], is a voluntary choice, not

---

personal inconveniences do not suffice. *See, e.g.*, *Weinberger*, 456 U.S. at 311; *Wansley v. Mississippi Dep't of Corr.*, No. 4:10-cv-149, 2013 WL 3168261, at *2 (S.D. Miss. June 20, 2013) (de minimis harm would not be irreparable).

irreparable harm."). And notably, despite rhetoric about a "liberty interest," Plaintiff does not actually allege that she has any individual constitutional right to be free from mask requirements. Nor could she. *See, e.g.*, *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (Easterbrook, J.) ("These plaintiffs just need to wear masks and be tested, requirements that are not constitutionally problematic.").

### c.    The unavailability of money damages is irrelevant in a case with no allegations of economic harm.

Plaintiff Van Duyne contends that she "is barred by sovereign immunity from collecting money damages from the CDC in this case." Mot. at 13. That is irrelevant to the question of irreparable harm in a case like this one. Plaintiff has not alleged that she has suffered any economic or financial harm that would *ever* be compensable by monetary damages—from CDC, or from anyone—even if sovereign immunity were not an obstacle. Therefore, uncompensable financial injury cannot support a finding of irreparable harm here. *Cf., e.g.*, *Louisiana v. Dep't of Commerce*, No. 21-cv-1523, --- F. Supp. 3d ----, 2021 WL 4125058, at *4 (E.D. La. Sept. 9, 2021) (finding irreparable harm because an agency rule will "result in economic harm" to the plaintiff, who then "will not be able to recover money damages against the Agency due to sovereign immunity"). Plaintiff's theory proves far too much: if the general existence of sovereign immunity necessarily establishes irreparable harm in any lawsuit against the federal government—even in a case with no allegation of any economic or financial injury—then there would be irreparable harm in *every* lawsuit against the government. Defendants are aware of no authority for that novel proposition, and Plaintiff has not cited any.

### d.    Asserting a (meritless) nondelegation claim does not relieve Plaintiff of the burden of showing irreparable harm.

Plaintiff Van Duyne argues that, "to the extent that Section 264 violates the nondelegation doctrine, the violation of constitutional rights alone is enough to establish irreparable injury." Mot. at 13. But "merely asserting a constitutional claim is insufficient to trigger a finding of irreparable harm." *Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 542 (E.D.N.C. 2020).

It is immaterial that some courts have concluded that there are "two categories of constitutional claims that presumably cause irreparable injuries—certain First Amendment and right-

13

of-privacy claims." *Brown v. HHS*, 4 F.4th 1220, 1225-26 (11th Cir. 2021), *vacated as moot*, 20 F.4th 1385 (11th Cir. Dec. 29, 2021). District courts in this circuit have repeatedly "disagree[d] with" the blanket "position that irreparable harm is automatically presumed where any constitutional claims are alleged." *Red River United v. Caddo Par. Sch. Bd.*, No. 21-cv-01193, 2021 WL 2125000, at *5 (W.D. La. May 25, 2021). To the contrary, "[t]hat the nature of certain constitutional violations, such as violations of the freedoms of speech and privacy, is such that they necessarily cause irreparable harm does not . . . establish that *any* alleged constitutional violation does so." *Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*, No. 05-cv-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006); *see Bouchard Transp. Co. v. DHS*, No. 20-cv-1116, 2020 WL 1689869, at *2 (E.D. La. Apr. 7, 2020) (similar). And here, Plaintiff brings only one constitutional claim, under the nondelegation doctrine—a separation-of-powers claim that bears little resemblance to the sorts of claims (almost entirely in the First Amendment context) in which a presumption of irreparable harm has sometimes been recognized.[7]

Regardless, as explained below, *see infra* at 22-24, Plaintiff's nondelegation claim is foreclosed by binding precedent—so there is no constitutional violation here at all, and any presumption of harm would thus be overcome. Where, as here, "a Plaintiff fails to show a likelihood of success on the merits of their claim that their constitutional rights were violated, a finding of irreparable harm is not warranted." *Hartman v. Acton*, No. 2:20-cv-1952, --- F. Supp. 3d ----, 2020 WL 1932896, at *4 (S.D. Ohio Apr. 21, 2020); *see also, e.g.*, *McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012) ("Because McNeilly does not have a likelihood of success on the merits, . . . his argument that he is irreparably harmed by the deprivation of his First Amendment rights also fails."); *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 666, 687 (E.D. Tex. 2019) (no irreparable harm where plaintiff brought several constitutional

---

[7] *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347 (1976) (cited in *U.S. Navy SEALs 1-26 v. Biden*, No. 21-cv-01236-O, 2022 WL 34443, at *8 (N.D. Tex. Jan. 3, 2022) (O'Connor, J.), *denying stay pending appeal*, 2022 WL 594375 (5th Cir. Feb. 28, 2022)). Plaintiff also cites (Mot. at 13-14) Justice Scalia's concurring opinion in *NLRB v. Noel Canning*, 573 U.S. 513, 570 (2014), but that case did not even involve a preliminary injunction. Plaintiff's only other authority, *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 783 (5th Cir. 1990), is no longer good law, *see Johnson v. Baylor Univ.*, 214 F.3d 630, 633 (5th Cir. 2000), and in any event turned on nuances about the preemptive effect of the Federal Aviation Act that have no analogue in this case.

claims that were unlikely to succeed on the merits); *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 585 (E.D. La. 2016) (same), *aff'd*, 678 F. App'x 250 (5th Cir. 2017).

      **e.**    **Every court to consider the question has rejected substantially similar requests for injunctive relief, including the Supreme Court of the United States.**

In earlier-filed litigation, many other individuals have sought time-sensitive injunctive relief from the CDC or TSA orders that require masks during commercial air travel. The Supreme Court has thrice rejected that relief, and so has every Court of Appeals to consider the issue—that is, the Fourth Circuit, Eighth Circuit, Eleventh Circuit, and D.C. Circuit—as well as the U.S. District Court for the Middle District of Florida. No court has granted such relief, and not a single Judge or Justice has noted their dissent from any of these orders. This motion should meet the same fate.

The first-filed case challenging the CDC's mask order, *Wall v. CDC*, No. 21-cv-975 (M.D. Fla.), began with an emergency request for a temporary restraining order, in which the plaintiff sought to fly maskless on an upcoming flight. The plaintiff in that case (unlike this one) alleged that he could not safely wear a mask, because of a disability. The district court denied relief, citing a lack of irreparable harm. Plaintiff then sought emergency relief from the Eleventh Circuit (twice), and then the Supreme Court—all of which was denied, without any noted dissent. Plaintiff's motion for a preliminary injunction was also denied, earlier today, because of the absence of irreparable harm.[8]

In another case in the Middle District of Florida, another individual recently filed a TRO motion premised on allegedly irreparable harm purportedly caused by being unable to fly without a mask on an upcoming work-related flight. Again, that plaintiff (unlike this one) alleged that he could not wear a mask for medical reasons. The district court denied relief, in part due to the lack of

---

[8] *Wall v. CDC*, No. 21-cv-975, Order, ECF No. 28 (M.D. Fla. June 15, 2021) (denying TRO motion for lack of irreparable harm); *Wall v. CDC*, No. 21-90017, Order (11th Cir. June 28, 2021) (denying emergency motion for permission to appeal); *Wall v. CDC*, No. 21-12179, Order (11th Cir. June 30, 2021) (dismissing appeal), *reconsideration denied*, *Wall v. CDC*, No. 21-12179, Order (11th Cir. June 30, 2021); *Wall v. CDC*, No. 21A2, Order (S. Ct. July 13, 2021) (denying application for injunctive relief presented to Justice Thomas); *Wall v. CDC*, No. 21-cv-975, ECF No. 255, Order at 5 (M.D. Fla. Mar. 4, 2022) (denying preliminary-injunction motion for lack of irreparable harm).

irreparable harm. *See Wall, et al., v. Southwest Airlines*, No. 6:21-cv-1008, Order at 6-7, ECF No. 153 (M.D. Fla. Dec. 8, 2021).

In addition, last year, several individuals filed petitions for review challenging TSA's enforcement of the CDC mask order "in a coordinated effort to enjoin the Mask Directives." *Faris v. TSA*, No. 21-3951, Order at 1 n.1 (6th Cir. Nov. 9, 2021) (collecting citations).[9] The petitioners all filed substantially similar emergency motions for stay or preliminary injunction. *See id.* The Fourth Circuit and the Eighth Circuit denied the motions, and then transferred the remaining proceedings to the D.C. Circuit, where the first-filed petition was pending.[10] The Second, Fifth, Sixth, and Eleventh Circuits granted no relief, and instead transferred the stay applications to the D.C. Circuit, which then denied all the rest.[11] All of those orders were unanimous.

After the D.C. Circuit had denied relief, two of the petitioners submitted an emergency application to the Supreme Court, again requesting a stay of TSA's enforcement of the CDC's mask order. Chief Justice Roberts denied the application without comment, and without referring the matter to the full Court. *See Wall v. TSA*, No. 21A198, https://perma.cc/E7UD-HMBM. On December 21, 2021, petitioners refiled an identical request with Justice Gorsuch. *Id.* This time, the application was referred to the full Court—but a few days later it too was denied, without any noted dissent. *Id.* This Court should chart the same course.

**II.    The public interest weighs sharply against a preliminary injunction.**

As of this filing, over 79 million cases and over 953,000 deaths caused by COVID-19 have been identified in the United States. *See* CDC, *COVID Data Tracker*, https://perma.cc/9YTC-XF94 (last visited Mar. 4, 2022). The need to protect crewmembers and the traveling public—including (but

---

[9] To be sure, the merits of some of those claims against TSA turned on different issues.  But the question of irreparable harm (and the other preliminary-injunction factors) were essentially identical to those presented here, and by the Middle District of Florida litigation cited above.

[10] *See Andreadakis v. TSA*, No. 21-2173, Order (4th Cir. Nov. 17, 2021); *Eades v. TSA*, No. 21-3362, Judgment (8th Cir. Nov. 17, 2021).

[11] *See Abadi v. TSA*, No. 21-1258, Order (D.C. Cir. Dec. 22, 2021); *Faris v. TSA*, No. 21-1221, Order (D.C. Cir. Nov. 12, 2021); *Marcus v. TSA*, 21-1225, Order (D.C. Cir. Nov. 12, 2021); *Wall v. TSA*, Order, No. 21-1220 (D.C. Cir. Nov. 10, 2021).

not limited to) children ineligible to be vaccinated, others unable to be vaccinated for religious or medical reasons, and the elderly or immunocompromised—plainly outweighs any alleged harm that Plaintiff Van Duyne might suffer in connection with her own personal travel-related inconveniences. *Cf. Competitive Enter. Inst. v. Dep't of Transp.*, 863 F.3d 911, 919 (D.C. Cir. 2017) ("[E]-cigarette vapor in confined aircrafts could harm non-users. Especially due to the involuntary nature of secondhand exposure on aircrafts, where individuals are often assigned seats, . . . [t]hose seated next to users may not want to expose themselves (or their babies or older children) to even small risks[.]" (citation omitted)).

Instead, as another court recently recognized in litigation challenging this very order, "the public interest is actually best served by preventing the further spread of COVID-19 through mask enforcement." *Wall v. Southwest Airlines*, No. 6:21-cv-1008, Order at 9, ECF No. 153 (M.D. Fla. Dec. 8, 2021). And many other courts around the country (including within the Fifth Circuit) have come to the same conclusion in the context of challenges to state and local mask rules. *See, e.g.*, *Miranda ex rel. M.M. v. Alexander*, No. 21-cv-535, 2021 WL 4352328, at *6 (M.D. La. Sept. 24, 2021) ("[E]njoining the School Board's mask policy would potentially cause substantial harm to the Parish's students, teachers, and faculty through community spread of COVID-19, which could potentially cause serious illness and death to them as well as though with whom they come into contact."); *L.T. v. Zucker*, No. 21-cv-1034, 2021 WL 4775215, at *11 (N.D.N.Y. Oct. 13, 2021) ("enjoining the mask mandate may imperil thousands of lives"). Plaintiff Van Duyne offers no basis for a different conclusion here.

## III. <u>Plaintiff Van Duyne is unlikely to succeed on the merits.</u>

For the reasons above, the Court can deny the motion without addressing the merits. *See White*, 862 F.2d at 1211. But Plaintiff is also unlikely to succeed on the merits of either of her claims.

### a. **The Transportation Mask Order is authorized by the Public Health Service Act.**

**1.** Congress authorized the CDC to adopt "such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions [of the United States], or from one State or possession into any other State or possession." 42 U.S.C. § 264(a). In doing so, CDC "may provide for such inspection,

fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in [its] judgment may be necessary." *Id.* Whatever the outer bounds of this authority, it plainly includes "sanitation" measures, or "other measures" akin to "sanitation" measures. *Id.*

Masking is a conventional "sanitation" measure. A leading modern dictionary defines "sanitation" as "the act or process of making sanitary" or "the promotion of hygiene and prevention of disease by maintenance of sanitary conditions." Sanitation, *Merriam-Webster.com Dictionary*, https://perma.cc/9ARR-YKYH. Dictionaries from the 1940s, published shortly before and after enactment of the PHSA, define the term similarly, or even more broadly.[12] Those dictionary definitions are all consistent with plain meaning and common usage—much like other "sanitation" measures, like wearing gloves or a gown, or disinfecting surfaces, wearing a mask is intended to reduce transmission of viral particles. That is why "doctors have been wearing medical-grade N95 or surgical masks . . . during surgeries or patient interactions as part of their daily routines, for many decades." YALEMEDICINE.ORG, *Why Doctors Wear Masks* (Sept. 1, 2020), https://perma.cc/TE77-8PBH.

Indeed, a temporary requirement to wear masks on public transportation during a pandemic is a comparable (or more modest) imposition than the other examples enumerated in the statute, such as "inspection," "fumigation," "disinfection," "pest extermination," and "destruction." 42 U.S.C. § 264(a). It thus qualifies, at minimum, as an "other measure[]" that CDC has determined is "necessary" "in [its] judgment," within the meaning of the second sentence of 42 U.S.C. § 264(a).

**2.** Plaintiff Van Duyne seems to agree with the basic premise of the argument above. In fact, she explicitly concedes that the CDC is authorized to "mak[e] and enforc[e] regulations that are like

---

[12] *See, e.g.*, Ex. 2, FUNK & WAGNALLS NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE 2172 (Isaac K. Funk et al. eds., 1946) (defining "sanitation" as "[t]he devising and applying of measures for preserving and promoting public health; the removal or neutralization of elements injurious to health; the practical application of sanitary science"); Ex. 3, WEBSTER'S NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE 2214 (William Allan Neilson et al. eds., 2d ed. 1942) (defining "sanitation" as the "use of sanitary measures," and defining "sanitary" as "[o]f or pert[aining] to health; for or relating to the preservation or restoration of health; occupied with measures and equipment for improving conditions that influence health; free from, or effective in preventing or checking, agencies injurious to health, esp[ecially] filth and infection; hygienic").

the kinds of measures listed in the statute: inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of contaminated animals and articles." Mot. at 5 (citation omitted). But Plaintiff fails to acknowledge that mask-wearing requirements qualify as a "sanitation" measure (or are at least "like" a "sanitation" measure). Accordingly, most of Plaintiff's arguments—about various canons of construction, and reining in supposedly limitless interpretations of agency authority—miss the mark. To sustain this order, the Court need not "read[] the statute as granting the Secretary the authority to make regulations where the only limiting principle is what is in his own judgment is 'necessary,'" as Plaintiff suggests. *Id.* at 9. Instead, the order may be upheld by reading the statute essentially as Plaintiff does: to authorize "regulations that are like the kinds of measures listed in the statute," including "sanitation" measures. *Id.* at 5 (citation omitted).

**3.** For that reason, the Supreme Court's decision in *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485 (2021) ("*AAR*")—holding that the CDC's eviction moratorium was likely unlawful—is no help to Plaintiff. *AAR* concluded that the second sentence of 42 U.S.C. § 264(a) at least "informs the grant of authority" in the first, "by illustrating the kinds of measures that could be necessary[.]" 141 S. Ct. at 2488. But again, that simply confirms that the statute at least authorizes "sanitation" measures, along with other "kinds of measures" like sanitation measures—as all parties seem to agree. *Id.*; *see also id.* (the listed measures "directly relate to preventing the interstate spread of disease by identifying, isolating, and destroying the disease itself"). And whatever could be said about the eviction moratorium, there is nothing indirect about the mask order—a mask is literally a physical barrier that "directly" reduces viral transmission in real time.[13]

---

[13] Plaintiff Van Duyne also relies heavily on a Sixth Circuit opinion about the CDC's eviction moratorium, *see* Mot. at 7-10 (citing *Tiger Lily, LLC v. HUD*, 5 F.4th 666 671 (6th Cir. 2021)), but that opinion is entirely consistent with Defendants' interpretation here. As an initial matter, the Supreme Court subsequently ruled on the same question in *AAR*, and, although it agreed with the Sixth Circuit that the CDC's eviction moratorium was likely unlawful, it did not adopt all of the same reasoning. In any event, as explained above, the mask order is a conventional "sanitation" measure that falls squarely within the second sentence of 42 U.S.C. § 264(a), *see Tiger Lily*, 5 F.4th at 671 ("we conclude that the first sentence of § 264(a) authorizes the Secretary to take action and the second dictates what actions he may take"), and the context here—a public-safety threat facing our nation's interstate-transportation system, *see Corbett*, 19 F.4th at 480—bears little resemblance to the evictions and landlord-tenant relations that the Sixth Circuit described as traditional state-law matters, *see Tiger Lily*,

**4.**  Plaintiff argues that "[a] blanket Mask Mandate applied to all passengers whose infection status is unknown does not target the disease; it targets people, healthy and unhealthy, contagious and not contagious alike." Mot. at 5. But even accepting Plaintiff's (confused) premise, that is a policy objection, not a statutory-interpretation argument—there is no textual basis for inserting such a requirement into the text of 42 U.S.C. § 264(a). "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.' . . . This principle applies not only to adding terms not found in the statute, but also to imposing limits on an agency's discretion that are not supported by the text." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) (quoting *Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019) (in turn quoting A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 94 (2012))).

In any event, the premise is wrong: the order does not "target people"; it seeks to reduce the spread of a communicable disease. As Governor Abbott previously explained, "wearing a face covering is important not only to protect oneself, but also to avoid unknowingly harming fellow Texans, especially given that many people who go into public may have COVID-19 without knowing it because they have no symptoms[.]" State of Texas, Exec. Order GA-29, *Relating to the use of face coverings during the COVID-19 disaster*, at 1 (July 2, 2020), https://perma.cc/KB4T-4CY4, *rescinded by* State of Texas, Exec. Order GA-34 (March 2, 2021), https://perma.cc/KTR5-AGY4. And as for the charge that mask requirements are not "targeted" measures, Governor Abbott likewise disposed of that argument in issuing an Executive Order that required nearly "[e]very person in Texas" to wear a mask: in his words, "requiring the use of face coverings is a ***targeted*** response that can combat the threat to public health using the least restrictive means, and if people follow this requirement, more extreme measures may be avoided[.]" *Id.* at 1, 2 (emphasis added). In fact, this order is far more "targeted" than the blanket mandate that was previously issued by Plaintiff Texas, as it is responsive to particularized concerns about public transportation and commercial air travel, where prolonged

---

5 F.4th at 671 (noting that the CDC's eviction moratorium "alters the federal-state framework by permitting federal encroachment" on the "traditional state power" over "landlord-tenant relations") (citation omitted).

"close contact" is common, "[s]ocial distancing may be difficult if not impossible," and the "interconnected" nature of transit systems means that "local transmission can grow even more quickly into interstate and international transmission." 86 Fed. Reg. at 8029.[14]

**5.** It is immaterial that 42 U.S.C. § 264(d) places certain limitations on the agency's authority to apprehend, examine, or detain persons "reasonably believed to be infected." That is not surprising, as such (entirely hypothetical) actions are far more intrusive than, for example, requiring masks. But the order challenged here does not provide for the apprehension or examination or detention of anyone, so those limitations are irrelevant to this case. Indeed, Plaintiff notes (correctly) that the CDC's order "does not rely on subsection (d)—it relies on subsection (a)." Mot. at 10.[15]

Plaintiff likewise offers no textual basis for her theorized distinction between "liberty interests" and "property interests"—words that appear nowhere in the statute. In any event, Plaintiff does not even allege that she *has* any "liberty interest" recognized under the Constitution to refuse to wear a mask on a commercial airline flight during a global pandemic of an airborne respiratory virus. And in fact, she does not. *See, e.g., Klaassen*, 7 F.4th at 593 (the requirement to wear a mask is "not constitutionally problematic").

**6.** Plaintiff Van Duyne appropriately concedes that the *Chevron* framework applies here. *See* Mot. at 6 (discussing the applicability of *Chevron*). Accordingly, even if the Court concludes that the "statute is ambiguous," the only remaining question is whether the "agency's construction is reasonable." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). Here, for all the reasons above, it is. In short, all parties agree that 42 U.S.C. § 264(a) authorizes "sanitation" measures, as well as "other measures" that are akin to "sanitation" measures. This order falls

---

[14] To be sure, Plaintiff Texas has since rescinded its Executive Order requiring masks. *See supra* at 20. But that has no bearing on the merits of this case, which turns only on pure questions of statutory or constitutional authority that are unaffected by the ups and downs of the pandemic.

[15] Plaintiff's reliance (Mot. at 9-10) on the statutory title "Part G—Quarantine and Inspection" is likewise unhelpful. There is nothing about that generic title (which covers not just the section at issue in this case, but all of 42 U.S.C. §§ 264-72) that is inconsistent with the operative statutory text in § 264(a). Regardless, "[t]he title of a statute . . . cannot limit the plain meaning of the text." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quoting *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947)).

comfortably within that authority. So the CDC's interpretation is at least reasonable, and thus entitled to deference under *Chevron*.

      **b.**      **The Public Health Service Act does not violate the nondelegation doctrine.**

      Plaintiff argues that if 42 U.S.C. § 264(a) authorizes the CDC's mask order, then that "understanding of the CDC's authority violates the nondelegation doctrine[.]" Mot. at 11. This claim is without merit.

      **1.**      The Fifth Circuit recently rejected a nondelegation challenge to a federal public-health statute. In *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436 (5th Cir. 2020), the Fifth Circuit upheld a provision of the Family Smoking and Tobacco Control Act that made certain tobacco products (like cigarettes) subject to the Act's requirements and provided that the Act's requirements also would apply "to any other tobacco products that" the agency "by regulation deems to be subject to [the Act]." *Id.* at 438 (footnote omitted) (quoting 21 U.S.C. § 387a(b)).

      Rejecting that nondelegation challenge, the Fifth Circuit set out principles established by more than 80 years of Supreme Court precedent. It explained that "[d]elegations are constitutional so long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized [to exercise the authority] is directed to conform.'" *Big Time Vapes*, 963 F.3d at 441-42 (citation omitted). "It is 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority.'" *Id.* at 442 (quoting *American Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)).

      The Fifth Circuit emphasized that "[t]hose standards . . . are not demanding." *Big Time Vapes*, 963 F.3d at 442 (citation omitted). Even though Congress has delegated authority since "the beginning of the government," *id.* (citation omitted), the Supreme Court "has found only two delegations to be unconstitutional," *id.* at 446. One "provided literally no guidance for the exercise of discretion," and the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (citing *Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935), and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).

By contrast, in the more than 80 years since those two decisions—both from 1935, and both about the same statute—the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Mistretta v. United States*, 488 U.S. 361, 373 (1989), and "ha[s] 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law,'" *American Trucking*, 531 U.S. at 474-75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)).   The Supreme Court has upheld statutes authorizing the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785-86 (1948); authorizing the Price Administrator to fix "fair and equitable" commodities prices, *Yakus v. United States*, 321 U.S. 414, 420 (1944); authorizing the FCC to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225-26 (1943); authorizing the SEC to ensure that a holding company's structure does not "unfairly or inequitably distribute voting power among security holders," *American Power & Light*, 329 U.S. at 104-05; directing the Sentencing Commission to promulgate then-binding Sentencing Guidelines for federal crimes, *Mistretta*, 488 U.S. at 374-77; and directing the EPA to set nationwide air-quality standards limiting pollution to the level required to "protect the public health," *American Trucking*, 531 U.S. at 472 (citation omitted).

The Fifth Circuit has likewise "uniformly upheld Congress's delegations." *Big Time Vapes*, 963 F.3d at 442 n.17 (citing, as examples, *United States v. Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998) (upholding delegation of authority to the Department of Justice to "define nonstatutory aggravating factors" to determine which offenders were "death-eligible" under the Federal Death Penalty Act); and *United States v. Mirza*, 454 F. App'x 249, 256 (5th Cir. 2011) (per curiam) (upholding International Emergency Economic Powers Act's delegation, which authorizes the President to declare a national emergency and limit certain types of economic activity related to that threat)).

**2.** The grant of authority in the first sentence of 42 U.S.C. § 264(a)—of measures that are "necessary to prevent the introduction, transmission, or spread of communicable diseases"—even standing alone, is narrower and clearer than many of the statutes, *supra*, which have been upheld by the Supreme Court or the Fifth Circuit in the face of nondelegation challenges.   But any concern is

23

resolved by the second sentence, as interpreted in *AAR,* in which the Supreme Court stated that the scope of 42 U.S.C. § 264(a) is "inform[ed]" by the list of six specifically authorized measures (*i.e.*, inspection, fumigation, disinfection, sanitation, pest extermination, and destruction).   141 S. Ct. at 2488.  That clarification resolves any arguable nondelegation problem with 42 U.S.C. § 264(a).

**3.**  Some have speculated that the Supreme Court "might well decide—perhaps soon—to reexamine or revive the nondelegation doctrine."  *Big Time Vapes*, 963 F.3d at 447.  But as the Fifth Circuit has warned in precisely this context, the lower federal courts "are not supposed to . . . read tea leaves to predict" where the law "might end up."  *Id.* (quoting *United States v. Mecham*, 950 F.3d 257, 265 (5th Cir. 2020)).  And under existing precedent, Plaintiff's nondelegation claim must fail.

**IV.    At most, any relief should be limited to Plaintiff Van Duyne.**

Regardless of the propriety of nationwide injunctions in general, here, the case for limiting any relief to Plaintiff Van Duyne is straightforward.  She alone moved for a preliminary injunction.  The State of Texas, the only other Plaintiff, did not join in her motion, nor file its own.  So although the Court should deny the motion outright, at most, any relief should be limited to Plaintiff Van Duyne.

An Article III court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."  *Gill v. Whitford*, 138 S. Ct. 1916, 1930, 1933 (2018).  Accordingly, as required both by Article III and traditional principles of equity, "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *id.* at 1934, and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Nationwide injunctions, by contrast, "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch."  *Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring).  And the order at issue is currently subject to litigation in at least eight other cases in seven different federal districts, underscoring why this Court should not attempt to decide its legality for all parties nationwide—particularly on a motion brought by one

24

individual Plaintiff. *See Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 601 (2020) (Gorsuch, J., concurring) (lamenting the "gamesmanship and chaos" created by the possibility of "conflicting nationwide injunctions," as well as the "asymmetric" effects in which "the government's hope of implementing any new policy could face the long odds of a straight sweep, parlaying a 94-to-0 win in the district courts into a 12-to-0 victory in the courts of appeal").[16]

The Fifth Circuit came to a similar conclusion just a few months ago, in granting a partial stay of a COVID-19-related preliminary-injunction order, prohibiting any application of that order outside the boundaries of the plaintiff States that had sought relief. *Louisiana v. Becerra*, 20 F.4th 260, 264 (5th Cir. 2021). In doing so, the panel explained why "[p]rinciples of judicial restraint" counseled against granting relief to non-parties—particularly where, as here, "[o]ther courts are considering these same issues" at the same time. *Id.* at 263. And the Fifth Circuit specifically distinguished the nationwide injunction that it had affirmed in *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015), as having been based on a "constitutional uniformity principle" unique to federal immigration law, as well as "that case's concern that patchwork rulings would undermine an injunction limited to certain jurisdictions." *Louisiana v. Becerra*, 20 F.4th at 263-64.

Here, by contrast, it would be easy "to provide complete relief" to Plaintiff Van Duyne, *Madsen*, 512 U.S. at 765 (citation omitted), without issuing any additional further relief. Accordingly, at most, any relief should be limited to Plaintiff Van Duyne. *See, e.g.*, *Wall v. TSA*, No. 21-1220, Order at 1 (D.C. Cir. Nov. 10, 2021) ("petitioners have not demonstrated any basis for enjoining the challenged agency action in its entirety").

## CONCLUSION

Plaintiff Van Duyne's motion for a preliminary injunction should be denied.

---

[16] *See Wall v. CDC*, No. 21-cv-975 (M.D. Fla.); *Faris v. CDC*, No. 22-cv-23 (W.D. Ky.); *Seklecki v. CDC*, No. 22-cv-10155; (D. Mass.); *Andreadakis v. CDC*, No. 22-cv-52 (E.D. Va.); *Health Freedom Defense Fund v. Biden*, No. 21-cv-1693 (M.D. Fla.); *Bobay-Somers v. HHS*, No. 21-cv-335 (N.D. Ind.); *Chenge v. CDC*, No. 22-cv-165 (W.D. Mich.); *see also Mahwikizi v. CDC*, No. 21-cv-3467, 2022 WL 602452 (N.D. Ill. Mar. 1, 2022) (granting CDC's motion to dismiss free-exercise and free-speech challenge). Several (but not all) of these cases were filed by *pro se* litigants.

Dated: March 4, 2022                         Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             CHAD E. MEACHAM
                                             Acting United States Attorney

                                             ERIC B. BECKENHAUER
                                             Assistant Branch Director

                                  By:        */s/ Stephen M. Pezzi*
                                             STEPHEN M. PEZZI (D.C. Bar No. 995500)
                                             MICHAEL J. GERARDI
                                             ANDREW F. FREIDAH
                                             JOHNNY H. WALKER
                                               Trial Attorneys
                                             United States Department of Justice
                                             Civil Division
                                             Federal Programs Branch
                                             1100 L Street NW
                                             Washington, DC 20005
                                             Telephone: 202-305-8576
                                             Email: stephen.pezzi@usdoj.gov

                                             *Counsel for Defendants*

26