IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ELIZABETH VAN DUYNE, and THE STATE OF TEXAS,<br> *Plaintiffs,*<br><br>v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION, ROCHELLE P. WALENSKY, in her official capacity as Director of the CDC, SHERRI A. BERGER, in her official capacity as Chief of Staff of the CDC, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, XAVIER BECERRA, in his official capacity as Secretary of HHS, and UNITED STATES OF AMERICA.<br> *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:22-cv-00122-O |

**PLAINTIFF BETH VAN DUYNE'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

ROBERT HENNEKE
rhenneke@texaspolicy.com
MATTHEW MILLER
mmiller@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

*Attorneys for Plaintiff Elizabeth Van Duyne*

Plaintiff Beth Van Duyne files the following reply to Defendants' Opposition to Plaintiff Elizabeth Van Duyne's Motion for a Preliminary Injunction. (Doc. 13).

**I.     Plaintiff is likely to succeed on the merits.**

Defendants urge the Court to not even consider the merits of Plaintiff's Challenge. (Doc. 13 at 27). But likelihood of success on the merits is "arguably the most important" factor for injunctive relief, *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 1985) (discussing temporary stays of removal); *accord Defense Distributed v. U.S. Dep't of State*, 865 F.3d 211, 212 (5th Cir. 2017) (Elrod, J., dissenting from denial of petition for rehearing en banc), and Plaintiff is likely to win on the merits.

   **A.     Within the meaning of the statute, the Mask Mandate is not a "sanitation" measure nor is it like a sanitation measure.**

When read as a whole, § 264(a) does not authorize the CDC to issue the Mask Mandate. Defendants' argument, on the other hand, hinges entirely on the meaning of "sanitation."[1] (Doc. 13 at 27-32). To arrive at their favored meaning, they rip "sanitation" out of the statute and then offer the broadest possible meaning as to what it authorizes the federal government to do. This is not how courts interpret statutes. "[I]ndividual terms or phrases should not be interpreted in isolation." *Sealed Appellee 1 v. Sealed Appellant 1*, 767 F.3d 418, 421 (5th Cir. 2013). Section 264(a) allows for "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated . . . , and other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a). Defendants' interpretation § 264(a) ignores the context, structure, and history of statute.

---

[1]     Defendants' only argument is that the Mask Mandate is a "sanitation" measure or at least like one and do not contend any of the other measures listed authorize the Mask Mandate.

        *1.     In context, "sanitation" does not confer authority to the CDC to issue population wide, preventative health measures.*

"Sanitation" must be read in context with the words around it "We are not to focus myopically on a particular statutory provision in isolation because [t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *Sw. Elec. Power Co. v. United States EPA*, 920 F.3d 999, 1023 (5th Cir. 2019) (internal quotations omitted). As the Supreme Court noted, all the measures listed in § 264(a) "directly relate to preventing the spread of disease by identifying, isolating, and destroying the disease itself." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021) ("AAR"). Accordingly, the measures adopted by the CDC must involve "direct targeting of disease." *Id.* The Mask Mandate applies to all travelers. It does not discriminate between the people capable of spreading disease and the millions of travelers that are not capable of spreading disease. Therefore, it is not a measure that directly targets disease.

"Sanitation" must be read in conjunction with "the company it keeps." *United States v Koutsostamatis*, 956 F.3d 301, 307 (5th Cir. 2020) (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel Wilson*, 559 U.S. 280, 287 (2010)). Construing sanitation so broadly would be inconsistent with the "discrete actions" authorized by the other measures in the statute." *See Florida v. Becerra*, 2021 U.S. Dist. LEXIS 114297, at *43 (M.D. Fla. 2021). Dictionary definitions are not dispositive. "[T]he meanings of common words (which typically have multiple definitions) must be determined in the context in which they appear." *Texas v. United States EPA*, 983 F.3d 826, 836 n.2 (5th Cir. 2020)

All the other § 264(a) measures involve finding and eliminating known sources of disease—e.g., fumigation, disinfection, etc. Sanitation should be understood similarly. Or, consistent with Defendants' definition, it is the "process of *making* sanitary." Requiring travelers

2

that do not have COVID-19, are not suspected of having COVID-19, and cannot transmit COVID-19 to wear masks does not *make* them sanitary, because they were already sanitary.

Defendants' reading would also subsume the other measures listed and render them mere "surplusage." If "sanitation" merely means any preventative measure that could limit disease spread, then there would be no need for the statute to include "fumigation," "disinfection," "extermination," as they would all just be forms of sanitation. This violates the surplusage canon, which requires "that every word is to be given effect." *Asadi v. G.E. Energy United States, L.L.C.*, 720 F.3d 620, 628 (2013). Instead, the Court should adopt a more natural reading of sanitation that requires the federal government to identify a source of possible infection and then neutralize it.

### 2. *The structure of the PSHA shows the federal government's authority is limited to targeted measures.*

The structure of the Public Health Services Act (the "PSHA") further reveals the federal government's limited authority. Section 264's placement within the "inspection and quarantine" portion of the PSHA gives credence to Plaintiff's interpretation of the statute as being limited to finding and combatting known or suspected causes of a disease. Though Defendants' attempt to wave away that argument in a footnote, titles of statutes have long aided courts in resolving the meaning of legislative text. *See, e.g.*, *United States v. Barnes*, 803 F.3d 209, 222-23 (5th Cir. 2015) (citing *I.N.S. v. Nat'l Ctr. for Immigrants' Rights*, 502 U.S. 183, 189 (1991)).

Further, multiple courts have noted that within § 264, subsection (a) is "concerned exclusively with restrictions on property interests" and subsection (d) is concerned with restrictions on people. *Tiger Lily, LLC v. United States HUD*, 992 F.3d 518, 522, 524 (6th Cir. 2021); *accord Chambless Enters. v. Redfield*, 508 F. Supp. 3d 101, 111 (W. D. La. 2020) (Section 264 allows "measures [that] include the authority to impose restrictions on individuals' freedom of movement, including the 'apprehension, detention, or conditional release of individuals.'" It "also

3

include[s] intrusions on private property, such as its 'inspection, fumigation, disinfection, sanitation,' and even 'destruction.'"). This makes sense given that subsection (a) concerns "animals or articles found to be so infected." § 264(a).

Defendants have provided no answer to resolve this discrepancy other than to say that Plaintiff does not have a constitutionally protected liberty interest in not wearing a mask. (Doc. 13 at 30). This answers the wrong question. The question here is not whether Plaintiff has a liberty interest in going maskless on airplanes; it is whether Congress gave Defendants the authority to take away her liberty to choose whether to wear a mask on airplanes. Defendants also argue the Mask Mandate does not target people. This is a strange conclusion to draw from a regulation titled "*Requirement for <u>Persons</u> to Wear Masks While on Conveyances and at Transportation Hubs*." 86 Fed. Reg. 8025 (Feb. 3, 2021) (underline added). People are clearly the target of the regulation.

This distinction between property regulations and regulation of persons helps make sense of the entire statute. As Defendants point out, the Mask Mandate is "more modest" than the other measures enumerated in subsection (a)—"inspection," "fumigation," "disinfection," "pest exterminations," and "destruction." This is because, as the Sixth Circuit noted, Congress never meant for subsection (a) to be applied to people. Just like Congress would not expect the CDC to "fumigat[e]" a person, neither would Congress have expected the CDC to "sanit[ize]" a person. Subsection (d) is the only part of the statute that concerns regulation of people, and it requires that a person be "reasonably believed to be infected with a communicable disease." The CDC's blanket Mask Mandate does nothing of the sort.

       3.    *The history of federal quarantine and disease control shows the PSHA's limited role for the federal government.*

The PSHA did not grant the federal government new public health powers. It merely codified its existing role of inspection, quarantine, and assisting state authorities. In *Florida v.*

*Becerra*, the CDC conceded that the PSHA "consolidates and codifies the federal quarantine practices applied during the previous century." 2021 U.S. Dist. LEXIS 114297, at *44. Here, the CDC claims the authority to institute a Mask Mandate for interstate travel for the first time in history. This claim of newly discovered power in a "long-extant statute" should be viewed "with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014).

Defendants' explanation of the federal government's history of combatting communicable disease shows that its role has traditionally been limited to "help[ing] states enforce quarantine laws" and "inspections." (Doc. 13 at 12-14). When an item was suspected of being infected, "the item was subjected to a process of disinfection, typically either steaming or fumigation." *Florida*, 2021 U.S. Dist. LEXIS 114297, at *39 (internal quotation marks omitted). The federal government did not have widespread authority to institute population wide public health measures. *Id.* at 43-44. This limited role is consistent with the general understanding that states are vested with quarantine authority as a part of their police powers. *Id.* at n.23 (listing cases); *cf. NFIB v. Dep't of Labor*, 142 S. Ct. 661, 667 (2022) (Gorsuch, J., concurring) ("There is no question that state and local authorities possess considerable power to regulate public health.").

Defendants also overstate what the PSHA authorized the federal government to do. In their telling, the PSHA provided "federal health authorities flexibility to respond to new types of contagion and 'expressly sanction[ed] the use of conventional public-health enforcement methods' by the government in disease-control efforts." (Doc. 13 at 13) (quoting *Consolidation & Revision of Laws Relating to the Public Health Service*, H.R. Rep. No. 1364 78th Cong. 2d Sess., at 24-25). Not so. That same report acknowledged *not* that it was expanding the federal government's role in combatting disease, but merely codifying "heretofore practiced" methods that were previously done by the federal government "under authority of regulations based upon implication rather than

5

explicit authority." *Consolidation*, at 24. The Mask Mandate is not a "discrete action, such as inspection and sanitation at a port of entry," *Florida*, 2021 U.S. Dist. LEXIS 114297, at *43, but an entirely different kind of *preventative* public health regulation aimed at all individuals at airports and on airplanes. The Court should recognize this limitless understanding of statutory authority as inconsistent with the modest scope of § 264(a) and hold that Plaintiff is likely to succeed on the merits.

> **B.   Defendants' broad reading of the statute constitutes a nondelegation violation.**

Defendants are similarly dismissive of Plaintiff's nondelegation claim. (Doc. 13 at 32-34). In doing so, they recognize that congressional delegation to an agency must have "boundaries" or else it runs afoul of the nondelegation doctrine. (*Id.* at 32) (quoting *Big Time Vapes v. FDA*, 963 F.3d 436 (5th Cir. 2020). These boundaries must "meaningfully constrain[]" the Executive's discretion. *Touby v. United States*, 500 U.S. 160, 166 (1991). Congress cannot "merely announce vague aspirations and then assign others the responsibility of adopting legislation to realize its goals." *Gundy v. United States*, 139 S. Ct. 2116, 2133 (2019) (Gorsuch, J., dissenting). Defendants fail to show how their interpretation of § 264(a) meaningfully constrains the CDC's discretion.

Defendants point to the recent holding in *AAR* as meaningfully constraining § 264: "[A]ny [nondelegation] concern is resolved by the second sentence, as interpreted in *AAR*, in which the Supreme Court stated that the scope of 42 U.S.C. § 264(a) is 'inform[ed]' by the list of six specifically authorized measures (*i.e.*, inspection, fumigation, disinfection, sanitation, pest extermination, and destruction). 141 S. Ct. at 2488." (Doc. 13 at 33-34). But any meaningful constraints offered by § 264(a)'s second sentence is a farce if Defendants can just isolate one of the six authorized measures and provide their most favored, broad definition of their power. This is exactly what they are attempting to do here, where they are defining "sanitation" as "the

promotion of hygiene and prevention of disease by maintenance of sanitary conditions." (Doc. 13 at 28). If "sanitation" can be read so broadly as to allow the federal government to force millions of air travelers a day to wear masks, it is hard to imagine a regulation that would not pass muster.

Allowing Defendants to adopt capacious definitions of their authority without being informed by the statute's context, structure, and history does not meaningfully constrain their discretion. If Congress meant to give Defendants such unfettered power, they needed to "provide substantial guidance." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001). Unlike "narrow, interstitial delegations of authority," *United States v. Melgar-Diaz*, 2 F.4th 1263, 1267 (9th Cir. 2021), a statute that confers the authority to "affect the entire national economy" must direct the Executive how to use it, *Whitman*, 531 U.S. at 475. Defendants' interpretation gives them the ability to vastly expand their authority through the use of broad definitions, and the Court should hold their interpretation of the statute violates the nondelegation doctrine.

**II.     The public interest always lies in enjoining unlawful regulations.**

As the Fifth Circuit recently said, the "public interest [is] in having government agencies abide by the federal laws that govern their existence and operations." *State v. Biden*, 10 F.4th 538, 559-60 (5th Cir. 2021). "The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions—even, or perhaps *particularly*, when those decisions frustrate government officials." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618-19 (5th Cir. 2021). Defendants' reliance on state and local mask mandates for evidence that an injunction is not in the public interest is misplaced. (Doc. 13 at 27). Whether local governments have the authority to issue mask mandates is irrelevant to whether Congress authorized the CDC to issue this Mask Mandate. Here, Congress did not authorize the CDC to issue the Mask Mandate and "the government has no

7

legitimate interest in enforcing 'an unlawful' mandate." *Feds v. Biden*, No. 3:21-cv-356, 2022 U.S. Dist. LEXIS 11145, at *21 (S.D. Tex. Jan. 21, 2022).

**III.     Plaintiff continues to experience ongoing harm.**

Defendants merely ignore the Fifth Circuit's recent decision *BST Holdings*. There, the Court noted that "the loss of constitutional freedoms 'for even minimal periods of time . . . unquestionably constitutes irreparable injury.'" 17 F.4th at 618; *Sambrano v. United Airlines*, No. 21-11159, 2022 U.S. App. LEXIS 4347, at *42 (5th Cir. Feb. 17, 2022) ("[C]onstitutional violations inflict irreparable harm."). Accordingly, Defendants attempt to distinguish between different types of constitutional freedom is misplaced, and the Court should find irreparable harm. Further, it is not the "magnitude" of the injury as much as the "irreparability that counts." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). Once Plaintiff is forced to wear a mask, there is no way to go back in time to remedy that she was subject to an unlawful regulation.

Furthermore, Plaintiff's harm is not "trifling," as Defendants claim. (Doc. 13 at 21-23). While Defendants may not be bothered by wearing a mask, many people are. Indeed, both the Fifth Circuit and Supreme Court have recently recognized that wearing a mask for hours at a time is not a trivial burden. In *NFIB*, the Supreme Court reinstituted a stay originally granted by the Fifth Circuit that prevented OSHA from enforcing an emergency temporary standard (the "ETS") that required millions of employees to get the COVID-19 vaccine. 142 S. Ct. at 663-64; *BST Holdings*, 17 F.4th at 609. The ETS contained an opt-out from the vaccine that required employees to take weekly tests and wear a mask at work. In that case, neither the Fifth Circuit nor the Supreme Court found the opt-out to be a minimal enough burden to leave in place, despite the fact that the federal government requested any interim relief leave the mask and test portion of the ETS in place. *See*

8

Response in Opposition to the Applications for a Stay, No. 21A244, at 83-84 (Jan. 30, 2021). Further, whether plaintiffs in other districts have "medical reasons" to not wear a mask has no bearing on this case. (Doc. 13 at 25). And appellate decisions to deny stay applications have neither precedential nor persuasive effect. A stay denial is "not a decision on the merits of the underlying legal issues." *Ind. State Police Pension. Tr. v. Chrysler LLC*, 556 U.S. 960, 2276 (2009).

Finally, any delay by Plaintiff in filing was reasonable. *See ADT v. Cap. Connect*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015). The constantly changing guidance gives passengers the illusion that the Mask Mandate is always just about to end. The CDC waited almost a full year after COVID-19 was declared a national emergency to even institute the Mask Mandate. (Doc. 13 at 16-17.) Additionally, the TSA's corollary security directives are always published with an expiration date just a few months away. *See* TSA, *Security Directives and Emergency Amendments*, https://www.tsa.gov/sd-and-ea (last accessed March 8, 2022). Plaintiff was reasonable in believing that the mandate would eventually expire. Unfortunately, that hope now appears to be false, and so Plaintiff filed this challenge.

**IV.  A nationwide injunction is appropriate.**

In closing, Defendants propose that any preliminary injunction be limited only to Plaintiff Van Duyne. "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). Universal injunctions against federal agency action are appropriate when "the public interest would be ill-served . . . by requiring simultaneous litigation of this narrow question of law in countless jurisdictions." *City of Chicago v. Sessions*, 888 F.3d 272, 292 (7th Cir. 2018).

9

A violation of the separation of powers supports a nationwide injunction. *City of Chicago v. Barr*, 961 F.3d 882, 919 (7th Cir. 2020) ("The nature of the injury is a valid consideration in determining the proper scope of injunctive relief. … [T]he executive's usurpation of the legislature's power … implicates an interest that is fundamental to our government and essential to the protection against tyranny."). That is exactly the case here, where an agency is either exceeding its Congressionally conferred authority or exercising discretion that should have never been delegated to it. *See also Mistretta v. United States*, 488 U.S. 361, 371 (1989).

An injunction limited to Plaintiff Van Duyne would be also nonsensical. Her challenge is a facial one and affects all passengers equally. It also crosses district, state, and circuit boundaries, which makes a geographic limitation unworkable as well. Even on an individual basis, what would Defendants' remedy look like in real life? Would Van Duyne carry a "permission slip" from the Court? Would airline personnel find her claim of an individual exception credible? And how would this look to other travelers, who would undoubtedly be confused?

If Plaintiff is successful in this motion, that means that the Court believes Plaintiff is likely correct that the rule is illegal. It would therefore make little sense to not enjoin the Defendants from enforcing the rule as a whole. Similarly situated potential plaintiffs would merely need to file their own lawsuits and judicial economy will not be furthered by a rush of lawsuits raising this narrow issue. *See* Amanda Frost, *In Defense of Nationwide Injunctions*, 93 N.Y.U.L. Rev. 1065, 1085 (2018). Limiting injunctive relief as proposed by Defendants would ultimately be disruptive and inefficient, and a nationwide injunction against Defendants is appropriate.

**V.     Conclusion.**

For the foregoing reasons, Plaintiff respectfully asks the Court to grant her motion for a preliminary injunction.

Respectfully submitted,

*/s/Matthew Miller*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
MATTHEW MILLER
Texas Bar No. 24046444
mmiller@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:  (512) 472-2700
Facsimile:  (512) 472-2728

*Attorneys for Plaintiff Elizabeth Van Duyne*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, I electronically filed the foregoing with the Clerk of the Court for the Northern District of Texas by using the CM/ECF system, which will serve a copy of same on the counsel of record.

*/s/Matthew Miller*
MATTHEW MILLER

11