1                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MASSACHUSETTS
2

3     PRO SE LITIGANT MICHAEL SELECKI,    )
      on behalf of himself and his        )
4     minor child M.S.,                   )
                                          )
5                   Plaintiff             )   CA No. 22-10155-PBS
                                          )   Pages 1 - 34
6            -VS-                         )
                                          )
7     CENTERS FOR DISEASE CONTROL &       )
      PREVENTION, et al,                  )
8                                         )
                    Defendants            )
9


10

                        **MOTION HEARING BY VIDEO**
11

12              BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
13

14

15

16

17                              United States District Court
                                1 Courthouse Way
                                Boston, Massachusetts  02210
18                              April 26, 2022, 9:37 a.m.

19

20

21

22
                              LEE A. MARZILLI
23                         OFFICIAL COURT REPORTER
                        United States District Court
24                     1 Courthouse Way, Room 7200
                             Boston, MA  02210
25                          leemarz@aol.com

1    A P P E A R A N C E S :

2         MICHAEL SELECKI, 2024 Courtyard Loop #104, Sanford,
     Florida, 32771, appearing Pro Se.
3
         STEPHEN MICHAEL PEZZI, ESQ., United States Department of
4    Justice Civil Division, Federal Programs Branch,
     1100 L Street NW, Washington, DC, 20005, for the Defendant,
5    Centers for Disease Control & Prevention and the Department of
     Health and Human Services.
6
         CHRISTOPHER A. DUGGAN, ESQ., Smith Duggan Buell & Rufo LLP,
7    55 Old Bedford Road, Lincoln, Massachusetts, 01773, for the
     Defendants American Airlines and Southwest Airlines.
8
         M. ROY GOLDBERG, ESQ., Stinson LLP,
9    1775 Pennsylvania Avenue NW, Suite 800, Washington, DC, 20006,
     for the Defendants American Airlines and Southwest Airlines.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          THE CLERK:  Good morning, Judge.

3          THE COURT:  Good morning.

4          THE CLERK:  I will call the case.  There's about 28

5    participants on, just to let you know.

6          THE COURT:  Thank you.

7          THE CLERK:  And Mr. Seklecki is participating by

8    telephone.  The Court calls Civil Action 22-10155, Seklecki v.

9    The Centers for Disease Control & Prevention, et al.  Could

09:38 10    counsel please identify themselves for the record.

11          THE COURT:  Well, why don't we start with Mr. Seklecki.

12          MR. SEKLECKI:  Hi.  Good morning.  Good morning, your

13    Honor.

14          THE COURT:  I can't see you.  Is that because you're

15    just on a cellphone?

16          MR. SEKLECKI:  Yes.  I'm not able to video chat today,

17    your Honor, due to my children and not having childcare.  My

18    wife works mornings.  If that is acceptable to the Court to

19    allow me to participate on the phone today, that would be

09:39 20    appreciated.

21          THE COURT:  All right.  So you're still pro se, by

22    yourself, not with a lawyer?

23          MR. SEKLECKI:  That is correct, your Honor.

24          THE COURT:  Okay.  All right, now for the airlines and

25    for the federal government.

1          MR. DUGGAN:  Your Honor, Chris Duggan on behalf of

2     American Airlines and Southwest.

3          MR. GOLDBERG:  Good morning, your Honor.  Roy

4     Goldberg, cocounsel with Mr. Duggan for American and Southwest.

5          MR. PEZZI:  Good morning, your Honor.  Stephen Pezzi

6     from the Department of Justice on behalf of the federal

7     government defendants, which are the CDC and the Department of

8     Health and Human Services.

9          THE COURT:  All right, by our count, we have

09:39 10   approximately thirteen pending motions, many of which look moot

11    and some of which are very much alive.  So I thought it would

12    make sense just -- I'm not sure I'm going to be ruling on the

13    merits on a lot of this as much as figuring out what's still in

14    the case and what isn't, okay?  So let's start.

15          First of all -- and this is just in the order of the

16    docket entries, okay -- is the motion to transfer case to the

17    Middle District of Florida, Docket No. 8 filed by American

18    Airlines and Southwest Airlines.  Is that still ripe?

19          MR. GOLDBERG:  Yes, your Honor, Roy Goldberg, and

09:40 20   there's also a government motion.

21          THE COURT:  I saw the government one, but it strikes

22    me they're very different issues because this issue is an issue

23    having to do with Mr. Seklecki and his son having to do with a

24    trip from Miami to Boston; but the case pending in Florida, as

25    we saw it, had to do with somebody else.  Was it Mr. Wall or

1    was it some -- but, anyway, not Mr. Seklecki.  So I'm not

2    inclined to transfer it down there.  They're different issues,

3    different people.  I may want to sever it, but am I right that

4    it's a completely different set of people?

5           MR. GOLDBERG:  Your Honor, if I may, Roy Goldberg for

6    a moment.

7           THE COURT:  Yes.

8           MR. GOLDBERG:  Mr. Wall filed two cases against the

9    federal government and against several airlines, seven airlines,

09:41 10    I believe, down in Orlando.  That case hasn't gone anywhere, so

11    he has had people in his coalition file various other cases.

12    Of interest is the fact that the person who actually paid for

13    the ticket on American from Miami ultimately to New Hampshire

14    that is part of the issues in the case, even though Seklecki

15    was the passenger, Lucas Wall paid for that ticket.  So these

16    cases are very much --

17           THE COURT:  But the issues having to do with the son

18    are very unique, and maybe not as much -- I don't know as much

19    about Mr. Wall's case, but I'm inclined not to transfer

09:42 20    Seklecki's end of it in terms of against the airlines, which I

21    think is ripe and I can start ruling on things.  So I just want

22    to make sure if I was right that it was a different case; it

23    wasn't Mr. Seklecki.  So I'm going to deny No. 8.

24           All right, now, motion for preliminary injunction, I

25    turn now to you, Mr. Seklecki.  That's moot.  At least there's

1    no irreparable harm after the ruling of the judge in the Middle

2    District of Florida, which I understand is being appealed, but

3    right now there is no mask mandate, so I think this is moot.

4    What do you think?

5         MR. SEKLECKI:  Right, your Honor.  Here's the thing.

6    You know, Judge Mizelle, you know, as you know, declared what

7    I've been arguing and what multiple people around the country

8    have been arguing, that it's been unlawful and illegal.  So it

9    was finally struck down on that aspect, but my concern is, if

09:42 10  the government already filed the appeal, there is nothing

11   stopping the airlines or any, you know, TSA from reissuing

12   their own mandate, and I want --

13        THE COURT:  I know, that may be, but as far as I'm

14   concerned, right now there's no irreparable harm; the issue is

15   moot.  I deny the motion for preliminary injunction on Docket

16   No. 15.  Okay, if it comes up again, then you know how to file

17   motions.  We've got thirteen of them.  So I think that deals

18   with 15 and 17.

19        Okay, now we have the motion to transfer to the Middle

09:43 20  District of Florida filed by the CDC and HHS with respect only

21   to that.  Where's Mr. -- there you are.  You know, the

22   chessboard keeps shifting on me.  So, Mr. Pezzi, so what's the

23   status?  Are you the lawyer in the Middle District of Florida?

24        MR. PEZZI:  I am part of a team, yes, but I am also on

25   the docket in the Middle District of Florida, yes, your Honor.

1          THE COURT:  Well, I'm completely confused because we
2     wouldn't have allowed this to happen in Boston.  How can there
3     be two cases in the Middle District of Florida on the same
4     issue before two different judges?  It's finally here.  The
5     question is, which judge do I send it to?
6          MR. PEZZI:  That's a fair question, your Honor.
7     There's actually now three cases in the Middle District of
8     Florida in front of three different judges that raise this
9     issue.  So we filed a motion to transfer the second-filed case,
09:44 10     the *Health Freedom* case that was in the news last week, to the
11     first-filed case.  That motion was denied, although it was
12     denied on the basis of a local rule that is, you know, specific
13     to the Middle District of Florida.  So as of now, there are
14     three cases in front of three different judges.
15          THE COURT:  Let me put it this way:  I'm not going to
16     be writing a magnum opus, a giant something on something that's
17     about to be resolved by the Eleventh Circuit.  I'm not going to
18     do that.  So what's not clear to me is, while I am inclined to
19     transfer the cases to the Middle District of Florida, it's
09:45 20     quite daunting as to which one I send it to.
21          MR. PEZZI:  Certainly, your Honor, and there's two
22     things I would say about that.  The first is, the basis of our
23     transfer motion, it was fact-specific to Mr. Seklecki and his
24     connection to Mr. Wall, who filed the first of the three
25     lawsuits in the Middle District of Florida and appears to be on

1  the Zoom this morning in fact.  I mean, we moved to transfer it

2  because of its, you know, factual and legal overlap with that

3  case.  And so our position is, if it is transferred to the

4  Middle District of Florida, it should then be assigned to

5  Judge Byron, who already has the overlapping litigation.

6          THE COURT:  It's sort of strange, I don't know, I

7  mean, because the case everyone is talking about that's going

8  up to the Eleventh is from another judge.  So would it make as

9  much sense now for me to just simply stay the portion against

09:45 10  you and wait to see what the Circuit does?

11          MR. PEZZI:  So, I mean, that is, I think, an option

12  that is available to your Honor, certainly.  I mean, as you

13  already noted, there is certainly no irreparable harm.  Whether

14  there ever was any irreparable harm, there's certainly none

15  now, and so you won't get any objection from the government to

16  that approach.

17          THE COURT:  So, Mr. Seklecki, what if I just stayed

18  it?  I'm confused procedurally by what's happening in Florida

19  in terms of which judge it goes to, and also it would preserve

09:46 20  your right to move forward if there was a reversal; I keep it

21  here but stay it pending the appellate proceedings in Florida

22  in the Eleventh Circuit, which is the Court of Appeals there.

23  I'm sort of thinking about that.  I'm just going to stay that

24  piece of the action, administratively close it, and we'll wait.

25  There's nothing happening now.  There's no irreparable harm,

1    and we'll see what the Circuit Court does with that.

2           And also, frankly, it may well resolve itself because

3    the President may -- I mean, it was only continued for two

4    weeks, so, I mean, he may have decided not to extend it anyway

5    depending on numbers, et cetera.  So I'm going to stay the

6    motion to transfer case and administratively stay that.  That's

7    No. 46.  If in fact it all gets consolidated at some point

8    before one judge, I don't want to pick and choose.  I don't

9    even know who to send it to.  If it becomes all consolidated

09:47 10    before one court at some point, would you let me know because

11    I'd be inclined not to reinvent the wheel on that piece of it,

12    on the one that just it's a broad facial challenge to the mask

13    mandate.

14           Okay, motion to compel -- now, what's -- I'm just

15    trying to go through it -- American Airlines -- I'm just trying

16    to -- is that -- Mr. Seklecki, do you remember which -- I'm

17    just going down literally in the order in which the docket --

18    is that to pay back the money that you had to pay in addition?

19    Was that what that was?  Here it is.

09:47 20           MR. SEKLECKI:  That's actually, your Honor, that

21    actually has been resolved.

22           THE COURT:  Oh, that's been resolved?  Okay, that's

23    moot.  Okay, okay, that's denied as moot.

24           Okay, now we have the motion to add as defendants

25    Peter Soares, Irina Spence, Innolene Doe, Misty Roe.  Is that

1  still alive, Mr. Seklecki?

2       MR. SEKLECKI:  Yes, your Honor.

3       THE COURT:  Okay, now, I know that's been opposed.  I

4  think I'm going to defer ruling on that because I think that

5  has to do with -- I need more briefing on the motion to

6  dismiss, and whether or not this is frivolous, or "futile" is

7  the word actually, will depend on how I rule on the motion to

8  dismiss, is that right, from the airline's point of view?  In

9  other words, there are lots of claims against the airlines that

09:48 10  you've moved to dismiss, and if any of those survive, I would

11  then evaluate whether or not adding these individuals makes any

12  sense or not.

13       MR. GOLDBERG:  Yes, your Honor, that's correct.  When

14  it comes to the motion to add, it's under two federal statutes

15  coming out of the civil rights era, and we claim that those

16  have no application to this case, but it's also briefed in our

17  motion to dismiss.

18       THE COURT:  Yes, so I'm going to defer ruling on 76

19  till I get an opposition to the motion to dismiss, and we'll

09:49 20  get to that in a minute, okay?  So Docket No. 76 is deferred,

21  and I'm not ruling on it right this minute.

22       The motion to compel American Airlines to refund and

23  reimburse, that's primarily the breach of contract claim, isn't

24  it, Mr. Seklecki?  That's part of your breach of contract, that

25  they didn't allow you to fly, so you should get your damages,

1    which is the difference in the ticket cost?  Is that right?

2           MR. SEKLECKI:  Yes, that's correct, your Honor.

3           THE COURT:  All right, so I'm going to deny the motion

4    to compel American Airlines to refund and reimburse, but the

5    reason I'm doing it is because you can't do that by motion.

6    That has to be done based on your breach of contract claim,

7    which is in the complaint and I'll deal with on a motion to

8    dismiss in future litigation.  That's basically your breach of

9    contract, that they didn't let you board is what your claim is.

09:50 10           Okay, now, No. 87 is the motion for sanctions against

11    defendant American Airlines' counsel.  Are you pressing that,

12    Mr. Seklecki?

13           MR. SEKLECKI:  I'm sorry.  My phone had cut out.  Your

14    Honor, can you just repeat that one more time?

15           THE COURT:  Yes.  You have a Docket No. 87, motion for

16    sanctions against defendant American Airlines' counsel.  Are

17    you pressing that motion for sanctions?

18           MR. SEKLECKI:  Yes.

19           THE COURT:  So now I'm going to try and figure out --

09:50 20    I may need oral argument on that, or maybe even an evidentiary

21    hearing, because there's very different views of the facts.

22    And I will also say, Mr. Seklecki, regardless of what the facts

23    are, let me just say, the question is whether or not counsel

24    had a reasonable understanding of the facts.  So, I mean, don't

25    forget, he's just trial counsel.  So I'm going to hold on that

1   for a minute.  We'll circle back to that.

2         Motion to set briefing schedule for motions for

3   summary judgment, I'm a little confused about that.  We're in

4   the motion to dismiss stage, right?

5         MR. PEZZI:  Yes, your Honor.  I can speak to that

6   briefly.  Mr. Seklecki had -- we had filed a motion, which your

7   Honor granted, to stay our answer deadline pending resolution

8   of dispositive motions in this case.  Your Honor granted that

9   motion.  As part of the briefing on that motion, Mr. Seklecki

09:52 10   also requested that the Court set an expedited briefing schedule

11   for summary judgment motions, through which most of the

12   deadlines have now elapsed.  Our view is that that should await

13   a later stage in the case.

14         THE COURT:  Well, I'm going to deny it, but I'm going

15   to set a scheduling order for the motion to dismiss, which I

16   think will help establish what lives and what dies among the

17   claims.

18         So motion to add as defendants Delta, Frontier, and

19   Spirit.  As I understand it, Mr. Seklecki, those are all

09:52 20   different flights, different times, different routes, right,

21   and they all preexisted our dispute?

22         MR. SEKLECKI:  No, your Honor.  Those flights

23   originated from Boston and into Boston and the Northeast going

24   to Boston Children's Hospital and Massachusetts General

25   Hospital.

1          THE COURT:  I think at this point that is just -- is

2     there anyone here representing -- have you conferred, followed

3     the local rule on that?  In other words, you're supposed to --

4     I forget exactly how it's worded -- confer with counsel and --

5     because I'm sure that they are going to file an opposition, if

6     they even knew about it, and I'm not inclined to add them at

7     this point.  I also am deeply worried that I'm not going to

8     become, every time you have a problem with a flight, the court

9     that you come to.  So I'm going to deny this without prejudice

09:53 10   to you following the local rules.

11          And also, I have to be candid, that I'm not going to

12    be the judge on every issue.  I thought you had a serious

13    concern on the February flight up to Children's Hospital in

14    Boston, but I'm not going to deal with every airline and every

15    time there was a problem.  So I'm denying it without prejudice.

16    You need to follow the local rules, and I would review any

17    motion on their part to oppose it because you can't just add

18    them.  So that's denied without prejudice.

19          Now, the motion to dismiss, that's very much alive

09:54 20   filed by American Airlines and Southwest.  When do you think,

21    Mr. Seklecki, you could file an opposition to that?

22          MR. SEKLECKI:  I plan to within two weeks, your Honor,

23    have that filed.

24          THE COURT:  So May, let's say -- I'm just ballparking

25    it -- May 13?

1          MR. SEKLECKI:  May --

2          THE COURT:  Could you do that?

3          MR. SEKLECKI:  Yes, I can have it done by May 13, yes.

4          THE COURT:  Now, I did have a law clerk do some

5     preliminary work on this, and this is the question I have in

6     advance so I can front it.  So the airlines claim, and they're

7     right, that there's a statute that covers disability in the

8     Department of Transportation and a grievance process within the

9     Department of Transportation, and my law clerk found that you

09:55 10   said that you did exhaust.  So when did you file the complaint

11    with the Department of Transportation?

12          MR. SEKLECKI:  I need to look back on the dates.  I

13    don't have them in front of me, but I do know that I put in DOT

14    complaints.  I just have to look back on the exact dates

15    because I don't remember when I filed DOT complaints.

16          THE COURT:  He found a form that you have to fill in.

17    Did you fill in that form?

18          MR. SEKLECKI:  I filed it directly with DOT.

19          THE COURT:  You can go on the website, and then

09:55 20   there's a form, right?

21          MR. SEKLECKI:  Yes.

22          THE COURT:  Did you fill out the form?

23          MR. SEKLECKI:  Yes.  The forms are in the exhibits.

24          THE COURT:  Okay.  So now the question is -- because

25    an agency can't unduly delay, but what you didn't say is when

1     you filed them.  Was it like a week or two ago, or is it like

2     three months ago?

3          MR. SEKLECKI:  No.  Oh, no, your Honor, no.  Those

4     were filed quite some time ago, within the past few months, I

5     would say, without looking at the exact paperwork, and I have

6     to go back and look at the dates that I filed it, but it's in

7     the exhibits.

8          THE COURT:  I didn't want you to feel trapped by this

9     because let me be clear here:  I don't know how long -- I

09:56 10   couldn't see anything in there when they had to act.  I don't

11    know the answer to that.  But let's assume you think it's too

12    long when you look at the dates, you have to file an appeal

13    with the Circuit Court, not with me.  That's by statute.  In

14    other words, I don't have jurisdiction one way or another

15    depending on how they ruled.  And I wanted to give that to you

16    because I didn't want everyone wasting a lot of time briefing

17    that.  I think it's -- take a look at it.  And I know you're

18    getting some legal help by this group.  Maybe they've hit this

19    issue before.  It looks as if, and I'm not ruling on it, that

09:56 20   you have to file an appeal within 60 days in the Court of

21    Appeals for the District of Columbia or in the Court of Appeals

22    for the circuit in which you reside.

23         MR. SEKLECKI:  Well, you do, your Honor, you do with

24    the Rehabilitation Act and conspiracy to violate the civil

25    rights laws.  That's only if DOT decides the complaint and not

1    deciding any mask complaints.

2         THE COURT:  Well, let me put it this way:  It looks

3    like there's an exhaustion requirement, and it looks like

4    49 United States Code 46110 provides filing and venue and

5    judicial procedures.  So I don't know, but I just wanted to

6    make sure we weren't spinning wheels on that.  When you file

7    your opposition, you need to address that.

8         MR. SEKLECKI:  No, yes, DOT is not deciding any mask

9    complaints, so --

09:57 10      THE COURT:  The way to deal with that may be appealing

11   it.  I'm not denying it.  I'm just saying it may not be to me.

12   So I just wanted you to just take a look at that statute and

13   the regulatory procedure.  But, in any event, the motion to

14   stay re motion to dismiss briefing is -- I'm going to -- you're

15   going to file the brief on the motion to dismiss.  That's

16   Docket 109.  We're not going to even deal with summary judgment

17   until I decide whether or not there's a viable motion to

18   dismiss by the airlines.  There are multiple counts here.

19        Now, there's also, and let me ask the government.

09:58 20  I've just stayed it with respect to you.  I'm assuming you mean

21   that I should stay it with respect to the motion to dismiss

22   too, right?  Is that right?

23        MR. PEZZI:  So we have not filed a motion to dismiss.

24        THE COURT:  Okay.

25        MR. PEZZI:  But your Honor has already stayed our

deadline to respond to the complaint.  So, I mean, we agree

with your Honor that this matter can, you know, pending further

developments in the *Health Freedom* case, that it can remain

stayed with respect to the federal government.

THE COURT:  Okay.  And then, finally, motion to

intervene for limited purpose, that just came in.  I haven't

even seen that.  This came in yesterday or last week.  What's

the motion to intervene for limited purpose?  I don't know --

wait a minute.

09:59  MR. DUGGAN:  I might be able to help you, your Honor.

THE COURT:  Does anyone -- I'm sorry.  Does that

even --

MR. PEZZI:  I don't recall seeing a motion to intervene.

MR. DUGGAN:  Yes, your Honor, I do.  I filed it.

THE COURT:  Who is you?  Who is this?

MR. DUGGAN:  I am.

THE COURT:  Oh, Mr. Duggan.  I must say I'm not

prepared on that one.

MR. DUGGAN:  Well, that's okay.  It actually addresses

09:59  something that you've already decided.  The issue was whether

to allow Delta, Spirit, and Frontier to be added as defendants,

and Mr. Goldberg and I filed a motion to intervene for limited

purposes to oppose that motion on behalf of Delta and Frontier.

THE COURT:  So I don't know why I -- if it's been

fully joined, then maybe I should just rule on it and not go

           1    through the procedural thing.

           2           MR. DUGGAN:  Well, it hasn't been -- there's one

           3    airline who has not responded yet.

           4           THE COURT:  Well, now I'm confused.

           5           MR. GOLDBERG:  Your Honor, this is Roy Goldberg.  It

           6    relates to the case you've already said that there's a futility

           7    argument, which you're going to be addressing in the motion to

           8    dismiss anyway.

           9           THE COURT:  Oh, that has to do with the individual

10:00    10    employees.  What I don't want to become is the go-to court

          11    every time Mr. Seklecki has a problem with an airline.  So I

          12    don't know anything about these, and now I'm confused, and I'm

          13    going to try and look it up.  Motion...

          14           MR. DUGGAN:  If I can interrupt you, your Honor,

          15    Motion 100 is a motion to add Delta and Frontier --

          16           THE COURT:  Yes, I'm getting there.  I'm getting

          17    there.  Hold on.  All right, I understand that, and...

          18           MR. DUGGAN:  And then several weeks ago, our

          19    Docket No. 118, you'll see I filed a motion on behalf of Delta

10:01    20    and Spirit for us to enter a limited appearance to oppose that.

          21           THE COURT:  I'm not sure I have it, but -- well, let

          22    me just say, what's the argument?  Is it --

          23           MR. DUGGAN:  The argument --

          24           (Overlapping speech.)

          25           THE COURT:  -- or is it that little procedural

1    requirement that they confer first?

2         MR. DUGGAN:  Well, it was the first part, that they

3    had not conferred, and so there was a procedural issue, so that

4    was the first part.  And the second part is, it's futile

5    anyway.

6         THE COURT:  Well, I can't rule on whether it's futile

7    anyway.  I mean, I don't know.  With those two airlines, it's a

8    completely separate set of data.  Let me just say, what were

9    the flights in February that I was dealing with with American

10:02 10   and Southwest?  What were the dates?

11         MR. DUGGAN:  February 22, your Honor, and then the

12   return flight I think was February 24.

13         THE COURT:  All right, February 22.  And when were

14   these flights with Delta and Spirit?

15         MR. DUGGAN:  You'd have to ask Mr. Seklecki that one.

16   I think there were different dates, different times, different

17   issues, and that's also one of the reasons that we opposed the

18   motion.

19         THE COURT:  Mr. Seklecki, do you remember what the

10:03 20   dates were on these other airlines?

21         MR. SEKLECKI:  Yes.  They were -- one of them --

22         THE COURT:  One was in October with Frontier.  That's

23   not part of this, so that would be denied.  It's too different.

24   You could have raised it originally.  What's Delta?

25         MR. SEKLECKI:  Your Honor, I just want to briefly say,

1     the reason why I did not file a lawsuit with those defendants

2     is because I was represented by an attorney for those

3     incidences, and the law firm had wrote to those defendants to

4     address that, and they failed to comply with the deadline of

5     the law firm's response.  The defendants did not respond to

6     those deadlines.  And because I already had a case filed in

7     Boston in this court for the other two airlines, I then added

8     them on because I didn't, you know, have -- I terminated the

9     representation on that and then brought those two airlines onto

10:04 10    this case.

11            (Indistinguishable background noise.)

12            THE COURT:  Anyway, so I'm going to deny the motion to

13    add the airlines because they're completely different dates and

14    different situations.  I was dealing with a February situation,

15    and these are three separate airlines, three separate flights

16    in October.  So it's without prejudice.  You can file separate

17    suits against them, but I'm not going to prolong this with

18    every airline flight.  Okay, so I'm going to deny without

19    prejudice the motion to add Delta, Frontier, and Spirit.  You

10:05 20    can file a separate suit, and maybe you can see how I address

21    this one here.  But let me just say, motion to intervene for a

22    limited purpose, that's denied as moot.

23            All right, so, now, what's remaining?  So let me just

24    make it clear, what's remaining here is the motion to dismiss

25    with a deadline in two weeks and the motion for sanctions, and

1   I'm now trying to look for a way of addressing that.  I could

2   simply have an oral argument right now and do it on the papers,

3   or I could essentially have an evidentiary hearing, I suppose,

4   but that's just time-consuming, and it would mean you'd have to

5   fly up here, Mr. Seklecki.  Or I guess we could do it on Zoom,

6   but it's just more awkward.  It's just hard, and you'd be

7   cross-examined.  So I'm just sort of asking counsel.  There are

8   disputed facts here, so maybe what I should do is just hear a

9   little bit of oral argument now and then make a decision as to

10:06  10   how to go forward.  Does that make some sense?

11          MR. DUGGAN:  Certainly, your Honor.

12          THE COURT:  Okay.  So, Mr. Seklecki, as you can tell,

13   the issue here isn't literally what happened to you, although

14   that's relevant.  It's what it is attorneys knew and whether

15   they had a reasonable basis for stating certain things in their

16   pleadings or not.  So with that in mind, Mr. Seklecki, why

17   don't you tell me what happened on that day that you think that

18   the attorneys didn't tell the truth about in their pleadings

19   and before me.

10:07  20          MR. SEKLECKI:  Okay.  Well, the attorneys lied, your

21   Honor, in the motion --

22          THE COURT:  Excuse me.  Before we go there, did you

23   read their submissions?  Have you read them all?  Are you

24   prepared to do this hearing?

25          MR. SEKLECKI:  Right now, actually, your Honor, I'm

```
 1    actually not.  I need to read more of what they exactly wrote

 2    here so I can better set myself to argue this because --

 3            THE COURT:  What they basically argued is that it's

 4    not true; that you were late in checking in, that one of the

 5    issues was that you didn't have the test, it had nothing to do

 6    with the mask, that the part about the mask was duly logged in,

 7    or at least that's what the attorneys understood from the

 8    people who were working there.  Do I have the gist of that

 9    correctly?

10:08 10        MR. DUGGAN:  Mostly, your Honor.

11            THE COURT:  Mostly?  So that's what they're saying.

12    So the things you have to address is, they claim you didn't get

13    there on time to check in through the kiosk, and you were late

14    at the gate, for starters.  And so you need to read what they

15    say because I'm going to ask you very specifically, if you're

16    saying they're lying, you have to say that what all these

17    people who were there are saying is false, and also that the

18    lawyers knew it was false.

19            MR. SEKLECKI:  Right.  Well, your Honor, they --

10:08 20    they -- from what I -- I did read a declaration that came in

21    from the woman that I had, you know, encountered at the airport

22    who also lied and is making statements.  I had a verbal

23    conversation with her with my wife regarding the flight.  She

24    explained to me that there was no flights going to Boston -- I

25    mean Manchester, so the only one that was available was going
```

 1    to Boston, not Manchester/Boston.  And the airline defendants

 2    and their attorneys, you know, were quoting things that were

 3    not true in that statement, trying to, again, you know, force

 4    the Court into believing that the -- that the -- that they

 5    were -- telling that I was trying to get a free flight and that

 6    I was trying to, you know, get a more convenient flight, when

 7    that was one hundred percent not the truth; and that they

 8    talked to this woman who I talked to at the airport.  And I

 9    told the woman about the COVID testing, I told her about all of

10:10  10   this, and she told me that he could not go because the COVID

11    test was not correct and all of this information.  So this is

12    what the airline defendants do is they, you know, twist things

13    around and claim their web of laws that applies to them; and,

14    you know, rather than following the law, they're breaking the

15    law.  So that is why these cases are in front of you today.

16         THE COURT:  Excuse me, excuse me.  That may be, and

17    that's what we're dealing with in the motion to dismiss, but

18    it's a very serious thing to accuse an attorney of deliberately

19    lying in court, in the court papers, or to the judge.

10:10  20        So I think this is what we should do:  I will have a

21    hearing on the motion to dismiss.  What I'm going to need you

22    to do, Mr. Seklecki, is to respond under oath to these various

23    declarations as to what's true and what's not true, and also

24    your version of the events because they're very specific in

25    these declarations about what time you showed up at the gate

1    and that you were late and that sort of thing.  And as you

2    know, I never said anything about forbidding a COVID test.  I

3    only dealt with the mask issue.

4         What I just want you to do is, on the date that we

5    have the hearing on the motion to dismiss, you're going to have

6    to have either submitted a declaration denying under oath

7    anything that you think is false, you know, saying it's a lie,

8    you know, what you just told me, or we'll have to have an

9    evidentiary hearing because at this point there are fact

10:11 10   disputes.

11        I mean, I don't know, Mr. Goldberg, do you have,

12   Mr. Duggan, any other solution here?  You might have to get a

13   different attorney to argue it if we end up doing an evidentiary

14   hearing.  So the whole thing is somewhat awkward, but I

15   probably won't even deal with a motion for sanctions till after

16   I've dealt with the whole case.  I do those things at the end.

17        MR. GOLDBERG:  Your Honor, Roy Goldberg.  I mean,

18   there's a separate issue here.  You know, he first wanted to

19   file a motion for contempt, but then he realized he had no

10:12 20   basis for that.  So then, just based on a couple sentences in

21   our opposition to the preliminary injunction motion that

22   Mr. Duggan and I had filed, where we basically said that it

23   wasn't like American refused to let his son travel without a

24   mask, and that's when he filed this very egregious -- and it's

25   no fun having on the other side of it, the first time in

1    33 years of practice, this pending out there, and that was what

2    it was based on.  We then had to go through much expense and

3    trouble of getting all these affidavits and declarations, and

4    Mr. Duggan did this work to get the story out there.

5          But he's not even basing it on that.  He's just

6    basically saying we put in a lie in our opposition to the

7    motion for preliminary injunction that American didn't just

8    completely say, "No, there's no way you can travel."  I just

9    don't think there's a basis for going forward at all.  It is

10:13 10   kind of egregious that he is pursuing a sanction motion against

11   us.  Mr. Duggan is really actually more -- he did the papers on

12   this, and I'll defer to him on that, but --

13         THE COURT:  Well, Mr. Duggan, I am going to give

14   Mr. Seklecki the opportunity to respond under oath as to what

15   he thinks, under oath.  I don't have that yet, do I?

16         MR. SEKLECKI:  No, you don't, your Honor.

17         THE COURT:  I want under oath, pains and penalties of

18   perjury, what it is you think that the attorneys misrepresented

19   to the Court.  And I know you have a -- you have a law firm, a

10:13 20   legal group that's helping you.  Isn't that right, Mr. Seklecki?

21         MR. SEKLECKI:  Yes, your Honor.  And also I was

22   involved with an attorney helping me with the other airlines,

23   but I was going to reach out and try to get counsel on this

24   because this is getting --

25         THE COURT:  Yes, because let me just say, it's not

1    good enough just if an attorney gets the facts wrong.  What he

2    has to have done is not had a reasonable basis for filing what

3    he filed.  And if the sole dispute is that the airlines

4    required a COVID test if you aren't masked, you know, for your

5    son, I don't know that that is in any way a violation of

6    anything that I said.  I was only dealing with the mask with

7    your son, so I never took a position or required that they

8    abandon the test.  So maybe that's a different issue for a

9    different day, but I didn't order that.

10:14  10         So I want you to -- Mr. Seklecki, I can't see you, so

11    it's very frustrating for me, so it's hard to communicate with

12    you -- but I want you to consult with either your former

13    attorney or with this law firm that's helping folks, you know,

14    deal with litigation, because anything that you file will have

15    to be under oath by the -- I guess it's the May 13 date to

16    respond to anything they put in because they put in quite a bit

17    of evidence that would support their position, and maybe you

18    disagree with it, but I just need to have it under oath.  Okay?

19         MR. SEKLECKI:  To support their position for what,

10:15  20    your Honor?

21         THE COURT:  That they didn't lie.

22         MR. SEKLECKI:  Okay.

23         THE COURT:  Not on the basic legal claims, but I would

24    like you to at least have a little legal representation here,

25    sir.

1          MR. SEKLECKI:  Yes, I need --

2          THE COURT:  -- so you yourself don't get trapped, and

3   then make a decision by the 13th whether you're pursuing this

4   motion for sanctions or not.  Meanwhile, I need to set a

5   hearing on everything that's still pending, which, as far as

6   I'm concerned, is only the motion to dismiss and only the

7   motion for sanctions.

8          And we should do that, Maryellen, by the end of May.

9          THE CLERK:  Okay.  Just a minute, Judge.  Sorry.  I'm

10:16 10   looking at your calendar very quickly.

11          THE COURT:  We're on trial, so it would have to be in

12   the afternoon.  Mr. Seklecki, when do you work?  What are your

13   hours?  Mr. Seklecki, is there a time that's more convenient?

14   Are you working at like a nine-to-five job, or are you okay

15   with doing it in the afternoon?

16          MR. SEKLECKI:  What time do you have?

17          THE CLERK:  Just hold on.  I'll take a quick look.

18   Just a minute.  We have a hearing on at 3:00 o'clock on

19   Thursday, May 26.  It's the *Doe* case, Judge, but it's a status.

10:16 20   So I can do a 3:30 on Thursday, May 26.  That's the weekend

21   before Memorial Day.  That's all I have available that last

22   week, Judge.

23          THE COURT:  That may be a little hard for me because

24   that's a graduation week.  Maybe is Wednesday doable?

25          THE CLERK:  You have *Syncloud* on, a summary judgment.

```
 1    I think that's huge.  I think that's huge.  Let me double-check.
 2    Just give me a minute.  Yes.
 3               THE COURT:  How about the first week in June, like the
 4    Monday?
 5               THE CLERK:  Just one minute.
 6               THE COURT:  Actually, is that Memorial Day?
 7               THE CLERK:  Yes, that's Memorial Day.
 8               THE COURT:  Yes, no one wants to be seeing me on
 9    Memorial Day weekend.
10:17 10           THE CLERK:  So Tuesday is either one of our two
11    criminal trials, so that's not good, and then the following
12    Wednesday you have a pretrial on.  Just a minute.  I'm going
13    into June 1.  Give me one second.  Wednesday, June 1, we have a
14    pretrial on in a civil case, but maybe we could do it at 3:00
15    o'clock Wednesday, June 1 at 3:00?
16               MR. SEKLECKI:  Wednesday --
17               THE COURT:  Is that acceptable to people?  I'm
18    planning, Maryellen, for at least an hour.
19               MR. SEKLECKI:  At what time?
10:17 20           THE CLERK:  Three o'clock because we have a 3:30 on.
21    And we'll do it by video, Judge?
22               THE COURT:  Yes.
23               MR. SEKLECKI:  And what is being held?
24               THE COURT:  On two motions, the motion to dismiss,
25    and, if you decide to press it, the motion for sanctions.
```

```
 1              MR. SEKLECKI:  Okay.

 2              THE CLERK:  It will be our second day of trial with

 3    one of the criminal trials.  I have to be in touch with you

 4    just in case it spills over.  I don't think it will, but --

 5              THE COURT:  You never know.

 6              THE CLERK:  You never know, so of course I will be in

 7    touch with all of you in case we're still selecting a jury in a

 8    criminal trial, but Wednesday, June 1 by video at 3:00 o'clock,

 9    motion hearing, and I'll send out a notice.

10              THE COURT:  All right.  And last but not least, not to

11    disclose anything, how's your little boy doing?

12              MR. SEKLECKI:  Well, he just got out of the hospital

13    yesterday.  He was taken in by ambulance the other day, and

14    we're seeing the doctor in Mass. General Hospital very soon,

15    and he's just losing a lot of weight, and I'm told --

16              THE COURT:  I don't think you should go into the

17    details.  So you're still in the middle of it, right?

18              MR. SEKLECKI:  Still in the middle of it, unfortunately.

19              THE COURT:  I wish you the best of luck with him.

20              MR. SEKLECKI:  Thank you.  Yes, it's really hard

21    always being in the hospital.  But I just wanted to mention

22    briefly, I didn't get a chance to say anything about the stay.

23    I object to the government's stay, so I'm going to file a

24    motion for summary judgment on the federal government --

25              THE COURT:  You know what, don't waste your time right
```

```
 1   now.  I'm going to be waiting to see what happens in Florida,
 2   all three courts in Florida.
 3             MR. SEKLECKI:  Okay.
 4             THE COURT:  Whoever is ruling on this in Florida.
 5             You know, it just reminds me, there are situations I
 6   suppose here in Massachusetts where three different judges got
 7   three different cases.  And you've tried to consolidate, and
 8   that hasn't worked; is that it?
 9             MR. PEZZI:  And, I'm sorry, your Honor.  My connection
10   I think dropped out for a second when Mr. Seklecki was speaking,
11   but the answer to your question is yes --
12             THE COURT:  I know you have three different courts,
13   but are motions for summary judgment pending in any of them?
14             MR. PEZZI:  Yes.  So one of them, the summary judgment
15   was decided last week.  That's the Health Freedom case.  One of
16   them is the Lucas Wall case that was the basis of our transfer
17   motion, for which a PI has been denied, but summary judgment
18   has been fully briefed.  And the most recent case was filed by
19   the State of Florida and the coalition states against the
20   federal government.  That one was just filed a few weeks ago,
21   so it has not gotten briefed.
22             THE COURT:  All right.  Well, at this point, as you
23   know, I've stayed the case because of the pending appeal with
24   the government.  You can file whatever you want, Mr. Seklecki,
25   but it's been stayed, and I'm not going to be ruling on it
```

```
 1  until I get some appellate ruling.

 2          MR. SEKLECKI:  Okay.

 3          THE COURT:  I don't want to waste your time.  Would

 4  you focus on the motion to dismiss because there are some

 5  really serious legal issues on the motion to dismiss.  And I

 6  want you to focus on whether or not you need to exhaust, and

 7  whether or not I've got any jurisdiction, or whether it goes up

 8  to the Court of Appeals.  So we need to sort of think about

 9  that.

10          I wanted to ask counsel, the airlines focused on the

11  fact that, as far as I can tell, a breach of contract action is

12  a viable action, but it strikes me as such a small amount of

13  money, you know, whatever, I don't know how much we're talking

14  about but probably under a thousand dollars, right?  So I'm

15  trying to figure out if there is a resolution of this case

16  involving Mr. Seklecki's individual circumstances.  So --

17          MR. SEKLECKI:  Well, your Honor, I asked the airline

18  defendants, I sent them an email -- I have to look back on my

19  email for the date -- on trying to resolve the entire case, and

20  they were unwilling to want to file a dismissal on it and

21  continually wanting to prosecute it.  You know, I had asked

22  them if they would settle it, you know, and file a joint

23  stipulation, and, you know, and an agreement, and they did not

24  want to do that at the time.  I don't know if that changed now,

25  but they did not want to do it at the time.
```

1          THE COURT:  Well, at some point when I start rolling

2     up my sleeves and addressing the merits, I may send you to

3     mediation, but right now I just was flagging.  We've done some

4     preliminary sort of "peek under the tent," if you will, and

5     that's how I've come up with some of these issues that I'm

6     flagging for you now.  Okay?

7          MR. SEKLECKI:  Yes, I agree.  I agree.  I mean, I

8     wouldn't oppose going to mediation, you know, and agreeing with

9     them to dismiss it, you know, on a joint agreement here, you

10:22 10    know, to solve this all so none of us are spending -- you know,

11    they're not spending, you know, tens of hundreds of thousands

12    of dollars in lawsuits, and you're not wasting time with the

13    Court, and, you know, these issues could just be resolved.  I

14    tried to.

15         THE COURT:  I understand.  Well, it's premature right

16    now, to say the least, and there are a bunch of pending things

17    that I've just knocked through, I think, and then we'll get

18    your opposition.  Do you know whether the airlines might want

19    to file a reply?  I don't know.  And then I have to add that

10:23 20    when it's a motion to add these defendants, these individuals,

21    I'll have to have probably, if I allow any of these claims to

22    go forward, will have to address that in a different -- so

23    remind me next time, okay, on how to handle that, whether

24    that's just a futility in general because the causes of action

25    aren't viable, or whether these individuals didn't have enough

1    of a connection to it based on the individual circumstances, so

2    I'm just deferring on that.  Okay, thank you very much.

3              MR. DUGGAN:  Your Honor?

4              THE COURT:  Yes.

5              MR. DUGGAN:  Excuse me.  I have one question for you.

6    On the motion for sanctions, if Mr. Seklecki decides to pursue

7    it, would it be helpful for your Honor for me to have Irina

8    Spence available to answer any questions about the PNR and what

9    it means and how it's done?

10:24 10         THE COURT:  I did read her declaration.  I leave that

11   up to you.  I think the...  I don't know.  I mean, the bigger

12   issue is -- I mean, she has her business records, so I'm not --

13   I read her declaration, but I think the big issue is whether or

14   not he got there on time, whether or not he was held up because

15   of this COVID test, and maybe he -- I always felt this was -- I

16   remember feeling very frustrated he wasn't on that flight.

17   Let's just put it that way.  So I don't know what happened.

18   And I hope it's not just a fact dispute because then I don't

19   know what I'll do.  But, as I said to Mr. Seklecki, it isn't so

10:25 20  much whether there's a fact dispute or not.  It is whether or

21   not you knew about it and didn't have something in the papers

22   correctly.  You haven't put in -- well, did you individually

23   put in declarations?

24             MR. DUGGAN:  I did, your Honor.

25             THE COURT:  Because you were the one to get the

1   papers; is that it?

2          MR. DUGGAN:  Yes, your Honor.

3          THE COURT:  All right, thank you.

4          MR. GOLDBERG:  May I be heard, your Honor?

5          THE COURT:  What is it, Mr. Goldberg?

6          MR. GOLDBERG:  Just you did offer or suggest -- you

7   didn't offer -- maybe we want a reply brief, and since we

8   already have the hearing scheduled, can we have seven days to

9   file a reply brief on a motion to dismiss?

10:25  10          THE COURT:  Sure, of course.

11          MR. GOLDBERG:  Okay, thank you.

12          THE COURT:  Yes.  All right, bye-bye.

13          MR. DUGGAN:  Thank you, your Honor.

14          (Adjourned, 10:25 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

    UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )

5

6

7          I, Lee A. Marzilli, Official Federal Court Reporter,

8   do hereby certify that the foregoing transcript, Pages 1

9   through 34 inclusive, was recorded by me stenographically at

10  the time and place aforesaid in Civil Action No. 22-10155-PBS,

11  Pro Se Litigant Michael Seklecki v. Centers for Disease Control

12  & Prevention, et al, and thereafter by me reduced to

13  typewriting and is a true and accurate record of the

14  proceedings.

15          Dated this 28th day of April, 2022.

16

17

18

19

20          /s/ Lee A. Marzilli
          _____
21          LEE A. MARZILLI, CRR
            OFFICIAL COURT REPORTER
22

23

24

25